COLUMBIA REALTY CORPORATION *v.* WILLIAM M. HARRELSON, JEANNE B. HARRELSON, CROW'S NEST, INC. AND BOARD OF COMMISSIONERS OF KOSCIUSKO COUNTY.

[No. 3-872A49. Filed March 27, 1973. Rehearing denied May 8, 1973. Transfer denied September 4, 1973.]

606

*Warren E. McGill, Stephen A. Seall, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of South Bend, for appellant.

*William I. Garrard, Rasor, Harris, Garrard & Lemon,* of Warsaw, for appellees Harrelson; *Max E. Reed, Widaman, Bowser, Reed & Geberin,* of Warsaw, for appellee, Crow's Nest, Inc.

SHARP, J.—The Columbia Realty Corporation (Columbia) commenced the proceedings below to obtain an injunction to prevent the obstruction of and interference with the rights of the public and Columbia to use a forty foot wide strip of land which runs in an easterly-westerly direction from Indiana State Road 13 A to the water's edge of Lake Wawasee. The Harrelsons filed a cross-complaint to quiet title to the land and requested, by motion, that Crow's Nest, Inc. (Crow's Nest) be made a party defendant. Crow's Nest then filed a cross-complaint by which they sought to quiet title to the same tract of land.

The case initially proceeded to trial by the court without the intervention of a jury in September of 1964. After hearing oral argument, the trial court took the case under advisement but no decision was made for approximately five and

three-fourths years. Thereafter, the Clerk of the Kosciusko Circuit Court notified the Supreme Court pursuant to Rule TR. 53.1 and in June of 1970, the Supreme Court appointed a Special Judge to hear the case.

The Special Judge, in the pretrial order, ordered a certified transcript of all the evidence at the original trial which would be considered as evidence in the second trial. The case was finally submitted to the trial court without the intervention of a jury in November of 1971, which resulted in a judgment entered in favor of Crow's Nest and against Columbia and the Harrelsons. All costs were assessed against Columbia. Only Columbia filed a Motion to Correct Errors and, when said motion was overruled, it perfected this appeal.

The issues presented for review are whether the decision of the trial court is (1) contrary to law, (2) not supported by sufficient evidence upon all the necessary elements of defense, and (3) contrary to the evidence. Columbia also raises the issue of whether the trial court erred in assessing all costs against Columbia alone.

The controversy centers on the location and nature of a forty foot wide strip of land running in an easterly-westerly direction from Indiana State Road 13 A on the east to the water's edge of Lake Wawasee on the west. The strip is bounded on the north side by lot 43 in the Waveland Beach Addition. Waveland Beach is located in Section 13, Township 34 North, Range 7 East, Kosciusko County (Section 13). Immediately south of Section 13 and adjacent thereto is Section 24, wherein Crow's Nest owns real estate in both the northwest and northeast quarters. The south line of Section 13 is the north line of Section 24. The Harrelsons own lot 43 in Waveland Beach, said lot being the southern most lot in Section 13.

A portion of the forty foot wide strip had been used as a roadway since approximately 1894. The strip was a part of or connected with a roadway which ran from said strip north

along the bank for approximately two-thirds of the Waveland Beach plat. In 1914, when Waveland Beach was platted, the road running along the bank was vacated by action of the Board of County Commissioners. After 1914 the strip was not used as a highway.

From 1914 until around 1938, the forty foot strip was covered with sumac, as was lot 43. The bank had become so steep that the lake was no longer accessible from the road. In 1938 or 1939, the then owners of lot 42 cleared off the entire area from their lot to Crow's Nest which was covered with sumac. There was no path or anything else over the entire area except sumac and weeds from Highway 13 A to the bank and even down the bank.

In 1947 Frederick Banta purchased lot 43 and at that time the area just south of the lot was overgrown with weeds and was unused in the year 1947. Mr. Banta had the area cleared and maintained it as if it was his own property. Visitors would occasionally park their automobiles on the area. Mr. Banta's successors continued to maintain the forty foot strip as part of their yard and stored a float there.

From 1954 Crow's Nest maintained the forty foot strip as part of its property in Section 24. It has continued said maintenance to the present time, except for that area from the bank to the water's edge of Lake Wawasee, which has been in an overgrown state since 1914.

## I.

The first issue presented for determination is the location of the forty foot wide strip of land. Several surveys were introduced by Columbia, at least one of which purportedly shows all of the forty foot wide strip as being in Section 13. Also introduced into evidence was the Plat of Waveland Beach as recorded on June 20, 1914, the legal description of said plat being as *follows*:

"Beginning at a point on the West line of Section 13, Township 34, North, Range 7 East, 708 feet south of the

quarter post; thence East to the West line of the public highway; thence in a Southeasterly direction along the West line of said highway to the South line of the North Half of the Southwest Quarter of Section 13; thence East along the said South line 193 feet to an iron pipe; thence South 62 degrees 22 minutes West 3.3 feet to the East line of the proposed highway; thence South 47 degrees 38 minutes East 76.95 feet; thence South 32 degrees 54 minutes East 573.51 feet; thence South 45 degrees 36 minutes East 241.35 feet; thence South 20 degrees 33 minutes East 446.1 feet; *thence South 9 degrees 52 minutes East 175.8 feet to the North line public highway on the South line of said Section 13; thence West along the North line of said highway to the water's edge of Lake Wawasee;* thence in a northwesterly direction along the water's edge to the West line of said Section 13; thence North to the Place of Beginning." (our emphasis)

Although the drawing of the Plat includes the forty foot wide strip, the plat of Waveland Beach reveals that the south line of the plat is the north line of the public highway on the south line of Section 13. The south line of Waveland Beach is coterminous with the south line of Section 13.

The platting of Waveland Beach and the vacation and relocation of the public highway established by use were presented to the Board of County Commissioners during July of 1914. Plaintiff's exhibit 2, which is the vacation and relocation petition for the county road, was prepared and presented by the same attorney who handled the platting. Plaintiff's exhibit 2 vacated the highway previously existing between the platted lots and the water's edge of Lake Wawasee and established, by order of the Board of County Commissioners, a highway on the east side of the lots of the plat and also a highway south of lot 43. The landowners petitioned for a new highway to be located as follows:

"Beginning at a point 193 feet east of the South line of the North Half of the Southwest Quarter of Section 13, Township 34 North, Range 7 East, from the West side of a public highway crossing in a northerly and Southerly direction said South line and South 62 degrees 22 minutes West 3.3 feet hereafter designated as 'Starting

Point'; Thence South 47 degrees 38 minutes East 76.95 feet; thence South 32 degrees 54 minutes East 573.51 feet; thence South 45 degrees 36 minutes East 51.35 feet; thence South 20 degrees 33 minutes East 446.1 feet; *thence South 9 degrees 52 minutes East 175.8 feet to the North line of the public highway on the South line of said Section 13; thence West along the continuation of the North line of said highway to the water's edge of Lake Wawasee 192.8 feet to the top of bank of said lake and 50 feet more or less from said top of bank to said water's edge."* (our emphasis)

It will be noted that the north line of the public highway is the south line of Section 13 and the south line of the plat of Waveland Beach. These several legal descriptions establish that the forty food wide strip is located south of Section 13 and this is reinforced by the vacation of the highway which ran along the bank of Lake Wawasee. The vacation was to commence on the south section line of Section 13 and was to proceed in a northwesterly direction following the top of the bank of Lake Wawasee. If any of the forty foot wide strip was located in Section 13 it would have been vacated from a point 65 feet west of the water's edge east to the water's edge.

This was clearly not contemplated by the parties at that time since they had just finished establishing the highway south of Section 13.

As against the specific language of the plat of Waveland Beach and the proceeding before the Board of County Commissioners, Columbia introduced several surveys which fixed the forty foot strip in Section 13.

The fact that the drawing of the plat of Waveland Beach includes the forty foot wide strip does not conclusively establish that the strip is within the plat. The legal description of the plat shows that, in fact, the strip was not meant to be included and could not have been included since it was not within Section 13.

There was substantial evidence from which the trial court could conclude that the forty foot strip as it presently exists was the area described to the south of the plat of Waveland

and the contemplated highway established by the proceeding before the Board of County Commissioners.

## II.

Since we have decided that the trial court did not err in locating the forty foot wide strip of land in Section 24, we must now determine the nature and character of said strip. The precise issue is whether all or a portion of the strip of land has ceased to be a public roadway, either by application of the provisions of IC 1971, 8-20-1-16, Ind. Ann. Stat. § 36-1808 (Burns 1949), or by total abandonment by the public.

As a preliminary matter, we must ascertain whether the entire length of the strip or only a portion thereof became a public roadway by user prior to the proceeding before the Board of County Commissioners in 1914. It is undisputed that for most of its length the strip was part of a public roadway established by user over a period in excess of twenty years and that said roadway ran over the strip in an east-west direction until it reached the bank of Lake Wawasee whereupon it turned north and ran parallel to said bank through most of what is now the plat of Waveland Beach.

Mr. Xanders, the attorney for the platting of Waveland Beach, testified that prior to 1914 the bank along the north-south roadway was very steep and higher than twenty feet. He further testified that the bank in the area of the forty foot wide strip was not as steep and that it was possible to take buggies down to the bank to be washed. Mr. Xanders first remembers buggies being taken to the water's edge of Lake Wawasee in 1911. By 1914 the bank had become so washed out that it was impossible to take a buggy to the lake.

Theries Doll testified that he was familiar with the area from as early as 1895 and that the traveled portion of the forty foot wide strip went to the top of the bank and then turned north and followed the bank. He never saw buggies or other vehicles go down the bank to the water's edge of Lake

Wawasee. Mr. Doll thought it possible that a buggy might be able to navigate the bank down to the water's edge, but he would not have liked to try it. At least as early as 1917, the bank was as steep as it is today and was more grown over with brush.

Cleo Green used to travel part way down the strip to carry water up from the Crow's property. Mr. Green would cross the east end of the strip and then crossed over to Mr. Crow's land to reach a spring that was situated near the lake. Mr. Green did not traverse the bank at the west end of the strip for access to the lake, but rather used Mr. Crow's land.

It is use for twenty years by the public which constitutes the establishment of such a highway and such use is the sole test. *Discher* v. *Klapp* (1954), 124 Ind. App. 563, ▓▓▓ 117 N.E.2d 753; *Pitser* v. *McCreery* (1909), 172 Ind. 663, 88 N.E. 303. Before a public highway by user can be established, it must appear that the general public, under a claim of right, used some defined way without interruption or substantial change for a period of twenty years. *Shellhouse et al.* v. *State* (1886), 110 Ind. 509, 11 N.E. 484; *Pitser* v. *McCreery, supra.* The use referred to and required by IC 1971, 8-20-1-15, Ind. Ann. Stat. § 36-1807 (Burns 1949) is use as a highway. *Spindler* v. *Toomey* (1953), 232 Ind. 328, 111 N.E.2d 715; *Discher* v. *Klapp, supra.*

The only evidence of use of the area west of the bank by the Public for access to Lake Wawasee is that it was used in 1911 to take buggies down to the lake to be washed. ▓▓▓ Such activity had ceased by 1914 as the bank became too steep to be easily traversed. There is no evidence of use of this area prior to 1911. This is hardly sufficient to establish a public roadway by user under § 36-1807.

The Board of County Commissioners, by the proceeding to vacate and relocate a part of the public roadway by user, specifically recognized the existence of a public highway in

the north line of which was the south line of Section 13. The recognition was as follows:

". . . thence South 9 degrees 52 minutes East 175.8 feet to the north line of the Public Highway on the South line of the said Section 13; thence west along a continuation of the North line of said highway to the water's edge of Lake Wawasee 192.8 feet to the top of the Bank and 50 feet more or less from said bank to said water's edge."

Although the above description recognized the existence prior to 1914 of a public highway south of Section 13, it does not conclusively establish that said highway ran to the water's edge of Lake Wawasee. The phrase "along a continuation of the North line of said highway" is readily susceptible to a construction that the highway established by the 1914 proceeding was to follow the north line of the old public highway by user to its termination and then continue on the same line to the water's edge of Lake Wawasee. This construction is reinforced by the subsequent language which employs the bank as a dividing point in the description. This corresponds with the evidence that the public highway by user ran only to the bank and then turned north to run along said bank.

Considering the evidence in a light most favorable to the judgment below, we hold that the fifty feet more or less from the bank to the water's edge of Lake Wawasee was never established as a public road by user prior to 1914 but rather was first laid out as a public highway by the proceeding before the Board of County Commissioners in 1914. The area from the top of the bank west to the water's edge of Lake Wawasee was, however, newly established by said proceeding and, as such, came within the provisions of § 36-1808, which provides that a highway must be opened up and used within six years from the time of its being laid out or it shall cease to be a highway for any purpose whatsoever.

There is no question that the area west of the bank was never opened up and used as a public highway within six years from

the date of the proceeding before the Board of ▮ County Commissioners. We, therefore, hold that the area west of the bank (approximately fifty feet) had ceased to be a public highway by 1920 and that title to said area was correctly quieted in Crow's Nest.

## III.

Columbia, by its complaint, sought an injunction to prevent the obstruction of and interference with an alleged public highway by user. Pursuant to said complaint, Co- ▮▮ lumbia had the burden of establishing the actual existence of the public highway by user and the exact location and description of the same. The trial court found against Columbia on its complaint, so that Columbia is seeking the reversal of a negative judgment. The burden, therefore, is on Columbia to persuade this court that the decision of the trial court, in so far as it relates to Columbia's complaint, is contrary to law. The standard of review was enunciated in *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573, 576, as follows:

> "It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be ▮ disturbed as contrary to law i.e. that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion."

There is a conflict, however, as to the exact location of the forty foot wide strip. The several surveys of Columbia indicate that the strip is predominantly, if not totally, located in Section 13. The plat description of Waveland Beach and the petition for vacation and location of public highways before the Board of County Commissioners indicate that the highway by user was situated with its north line on the south line of Section 13.

It is to be noted that the petitioners before the Board of County Commissioners in 1914 did not, as to any portion of

the relocated highway, petition for the old public road by user to be ascertained, described and entered on record pursuant to § 36-1807. Rather, they petitioned under IC 1971, 8-20-1-1, Ind. Ann. Stat. § 36-201 (Burns 1949), to have the public highway relocated and changed. In said petition, the landowners petitioned for the new highway to be located along the north line of the public highway by user which was supposedly located on the south line of Section 13.

The evidence before us shows, however, that the old public road by user varied considerably due to weather conditions and natural obstacles. Vehicles would navigate around stumps and other objects that hindered travel. There is no evidence other than the affirmation in the petition for relocation that the public highway by user was located exactly on the south line of Section 13 or that it was actually forty feet in width.

If the landowners in 1914 had petitioned under § 36-1807 to have the old public road by user ascertained, described and recorded, it might possibly have encroached upon land in Section 13 thereby leaving less real estate to be platted into lots. Under § 36-1807, the Board of County Commissioners has no power to describe and enter of record any way that substantially varies from that actually used by the public for twenty years or more. *Kruse* v. *Kemp* (1913), 179 Ind. 650, 102 N.E. 133.

To make sure that the new highway was located exactly where desired, the landowners petitioned under § 36-201 for a vacation of part of the old highway and for a change in that part of the remaining highway by user so as to make it conform to the description desired in the petition. We doubt very seriously that a public highway by user running through natural terrain would uniformly follow an unmarked section line and be of a uniform width of forty feet. To insure such an outcome the landowners in 1914 elected to use the condemnation provisions of § 36-201.

The provisions of § 36-201 regarding the vacation, location

or change of a highway are part and parcel of § 36-1808 requiring that a highway located or changed under § 36-201 be laid out opened within six years. *Smith* v. *State* (1940), 217 Ind. 643, 29 N.E.2d 786. A change of a highway necessarily involves a vacation and it does not matter if the action is labeled vacation or location. *Scofield* v. *Miller* (1925), 196 Ind. 635, 149 N.E. 345. Thus, the proceeding before the Board of County Commissioners was for a change of the public highway by user so that it would henceforth be located with its north line on the south line of Section 13. The change of highway necessarily entailed a vacation of the old highway by user and the location of the new highway in its place.

There is no direct evidence as to the exact location of the public highway by user prior to 1914. The trial court could easily have concluded that the forty foot strip as now exists represents the area condemned pursuant to § 36-201 for a public highway in 1914.

The highway changed by the proceeding in 1914 involved a vacation of the old highway by user and a location of the new highway. Since the new highway was located pursuant to § 36-201, it follows that it was subject to § 36-1808 and ceased to be a highway for any purpose after the expiration of six years for failure to be opened. The public highway by user was vacated by the change in the location of the new highway and the public highway by user did not become resurrected once the new highway became void for failure to be opened.

Finally, Columbia claims title to the forty foot wide strip by virtue of a quitclaim deed from Theries Doll and Minnie Doll dated July 11, 1964. The evidence shows that the Dolls did not own any real estate in Section 24. At the time of the platting of Waveland Beach, the Dolls were only two of many proprietors of Section 13. The deed does not show that Theries and Minnie Doll were the owners of all outstanding interests in Section 13 real estate in 1964 when the deed was executed.

Furthermore, there was evidence which placed the strip in question totally within Section 24, where the Dolls had no interest. The plat of Waveland Beach, in its description, does not include the disputed strip. From the conflicting evidence as to the location and character of the forty foot wide strip, we do not believe that the trial court committed error in denying Columbia's injunction or in quieting title to the strip in Crow's Nest.

## IV.

The final issue is whether the trial court correctly apportioned the costs under IC 1971, 34-1-32-5, Ind. Ann. Stat. § 2-3006 (Burns 1968), which reads as follows:

> "In actions where there are several plaintiffs, or several defendants, the costs shall be apportioned according to the judgment rendered; and where there are several causes of action embraced in the same complaint, or several issues, the plaintiff shall recover costs upon the issues determined in his favor, and the defendant shall recover costs upon the issues determined in his favor."

Section 2-3006 would appear to be an "express provision . . . in a statute" within the meaning of TR. 54(D) and is the proper basis for allowance of costs in this case.

In this case there were both several defendants and several issues. Under the statute costs should be apportioned on the judgment entered on the several issues. If there are several parties losing as to one of the several issues, costs should be apportioned accordingly.

Columbia lost on its complaint for an injunction and as to that issue costs were appropriately awarded. However, both Columbia and the Harrelsons were defendants to Crow's Nest's cross-complaint to quiet title. Crow's Nest prevailed in its action to quiet title and costs should have been apportioned between the two defendants to the action.

We, therefore, conclude that while the judgment of the trial court should be affirmed, we nevertheless must remand this case to the trial court as to the question of the apportionment of costs. With the exception of the question pertaining to costs, the judgment of the trial court should be and is in all other things affirmed. This case is hereby remanded for the sole purpose of reapportioning costs in accord with this opinion.

Hoffman, C.J. and Staton, J., concur.