GIERACH, Respondent, v. SNAP-ON TOOLS CORPORATION, Appellant.

*No. 75–608. Submitted on briefs June 1, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 465.)

50

For the appellant the cause was submitted on the brief of *Robert S. Schuch, Ervin P. Topczewski* and *Law Office C. Donald Straub,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *Kenan J. Kersten* and *Kersten & McKinnon,* all of Milwaukee.

HEFFERNAN, J. This action for negligence is brought by a user of a ratchet wrench against the manufacturer, Snap-on Tools Corporation. Peter Gierach, the plaintiff, was an employee of the Riebe Oldsmobile Garage in Grafton, Wisconsin. On May 1, 1973, Gierach was working on an Oldsmobile automobile when the ratchet wrench slipped. Gierach sustained injuries to his face, mouth, and teeth when the ratchet wrench struck him. The evidence showed that Gierach was using the wrench properly at the time the accident happened. After the accident, the wrench was placed in the tool box of Karrels, the service manager at Riebe, to whom the wrench belonged. About a week later, Dick Augers, a salesman for Snap-on Tools, made one of his regular sales calls to the garage and was told about the accident. He took the wrench into the back room and disassembled the gear housing. It was apparent to those present that a gear tooth was sheared. The plaintiff testified that Augers said, "Well, this is what the problem is, that

the gear is sheared and this would cause it to slip."
Karrels, the service manager, also testified that the
sheared gear was discovered when the Snap-on salesman
disassembled the housing. Karrels also testified to the
salesman's statement.

The action was brought by the plaintiff on the theory
that the accident was caused by the manufacturer's im-
proper design or manufacture of the ratchet wrench.

At the trial, Karrels, who was a master mechanic with
extensive experience, gave as his opinion that the gear
teeth were not properly hardened, and, as a consequence,
the gear tooth sheared off. On the other hand, there was
testimony by Godlewski, Snap-on's quality assurance in-
spector, that the gears were properly hardened, that they
were built and designed to withstand 5,000 pounds of
pressure, and that there was nothing wrong with the
manufacture or design of the tool. Snap-on's witness
acknowledged, however, that the maximum pressure that
could be exerted on the wrench by a worker would be
less than 1,000 pounds.

It was Godlewski's testimony that the wrench had not
been cleaned and maintained properly, that grease and
debris had built up within the gear housing, and the
gear pawl could not seat properly to fully engage the
gear teeth. He said that it was as a consequence of this
improper maintenance that the wrench slipped.

The parties, prior to trial, stipulated that the damages
for personal injuries were $4,500.[1] The jury, according-
ly, was required only to return a verdict in respect to

[1] The record is confusing, for the judgment recites that the
parties had, prior to trial, stipulated to a $4,500 damage ceiling.
Our review of the record indicated, however, that both in
plaintiff's motion after verdict for entry of judgment and in
verbal representations by both parties immediately prior to
trial, the damage ceiling was stipulated to be $5,000. However,
for purpose of this appeal, we accept the statement in the judg-
ment that the stipulated ceiling was $4,500.

negligence. Ninety percent of the negligence was attributed to Snap-on Tools Corporation and 10 percent to the injured plaintiff, Gierach. Judgment for the plaintiff was entered for the total sum of $4,249.69, including costs and disbursements. The appeal was taken from that judgment.

The trial judge instructed on the elements of negligence, and, in addition, instructed in respect to the duty of a manufacturer to exercise ordinary care in the design and manufacture of its product so as to render that product safe for its intended use. He also instructed that the manufacturer had the duty to exercise ordinary care to give adequate warning of the dangers attendant upon the proper use of the product. A *res ipsa loquitur* instruction was given in the following form:

"You are further instructed that if you find that the plaintiff was properly using the ratchet wrench in question at the time of the accident and that nothing occurred to cause the ratchet wrench to become defective after it left the defendant's control, and if you further find that the accident in this case ordinarily would not have occurred if the ratchet wrench had not been defective in its design, you may then infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendant in the design or manufacture of the ratchet wrench."

The court instructed the jury that Gierach had a duty to use ordinary care for his own safety.

The defendant, insofar as the record shows, submitted no proposed instructions to the court and failed to object to any of the instructions that were given. Yet, on this appeal, defendant argues for the first time that, because this is an action for negligence and not for strict liability under sec. 402(A) of the Restatement of *Torts,* a *res ipsa loquitur* instruction was inappropriate. This objec-

tion comes too late, because the defendant fully acquiesced in this instruction. In addition, a *res ipsa* inference is permissible in respect to any tort which occasions unintentional personal injuries if the elements necessary for instructing on that inference are placed in evidence. The evidentiary preconditions for the doctrine were summarized in *Utica Mut. Ins. Co. v. Ripon Cooperative,* 50 Wis.2d 431, 436, 184 N.W.2d 65 (1971):

"(1) The event in question must be of the kind which does not ordinarily occur in the absence of negligence; (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant."

The instruction given in the instant case was in substantial conformance with these standards and was not objected to. The evidentiary preconditions for the *res ipsa* inference were satisfied in this case. There is no dispute that the slipping of the gears would not have occurred in the absence of negligence. Exclusivity of control does not mean that the instrumentality be in the physical possession of the defendant at the time of the occurrence. As we noted in *Ryan v. Zweck-Wollenberg Co.,* 266 Wis. 630, 64 N.W.2d 226 (1954), quoting from Prosser, *Torts,* sec. 43, p. 298:

" 'All that is necessary is that the defendant have exclusive control of the factors which apparently have caused the accident; and one who supplies a chattel to another may have had sufficient control of its condition although it has passed out of his possession.' " (at 640)

Defendant also asserts that *res ipsa* is inapplicable in a products liability case where negligence is alleged. That assertion is completely without foundation in the law; and we conclude that, under the circumstances, it was within the sound discretion of the trial judge to give that

instruction. *Utica Mut. Ins. Co. v. Ripon Cooperative,* 50 Wis.2d 431, 184 N.W.2d 65 (1971) ; *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297 (1973). In the circumstances here, moreover, the *res ipsa* instruction was given without objection.

The defendant, on this appeal for the first time, impliedly objects to the instruction in respect to the manufacturer's duty to warn in respect to the use and care of the ratchet wrench. There was no objection to that instruction when it was offered by the court. However, the point which the defendant now seeks to assert was arguably made when the defendant objected to the special verdict question which inquired:

"Was the defendant negligent with respect to:
". . . (b) Failing to warn of dangers with respect to the ratchet wrench?"

The objection to the question was based, however, not on lack of an evidentiary basis at the trial, but rather on an answer given by the plaintiff to a question asked by defendant's counsel.

Defendant's counsel asked, "[C]an you think of any further instruction or warning that could have been given to you . . . ." The plaintiff responded that he could not think of any. From this, defense counsel concludes that it was conceded that no warnings were necessary. This position, however, is contrary to the entire tenor of the defendant's case.

It was the position of the defendant throughout the trial that the plaintiff and his fellow employees had failed to clean and maintain the wrench properly and that the consequent build-up of grease and dirt within the gear housing of the wrench caused the slippage. The response appropriately made by plaintiff's counsel to this assertion is simply that, if such hazard existed, the purchasers and ultimate users of the wrench should have

been warned by the manufacturer of the necessity of periodically opening the gear box and cleaning it. No warning was ever given by the manufacturer. The record shows that it was the defendant's theory of the case and its evidence that made it reasonable for the trial judge to instruct on the manufacturer's duty to warn of the necessity for the periodic cleaning of the wrench.

It was Godlewski, the defendant's expert witness, who testified that grease and dirt could build up within the gear housing and cause it to slip. It is apparent from the defendant's own testimony that it was aware of the slippage danger and yet it failed to give any warnings or instructions with respect to the maintenance or cleaning of the wrench.

Snap-on Tools, knowing that someone could be injured if the tool were not properly maintained, had a duty to warn and it failed to discharge that duty.

In view of the fact that the defendant failed to object to any of the instructions, and because the instructions given were not legally erroneous, no objection to the instructions can be raised on this appeal.

The defendant on this appeal argues that a verdict question should have been submitted to the jury in respect to whether the service manager, Karrels, was negligent in the supervision of Gierach or in the failure to warn Gierach in respect to the use and care of the ratchet wrench. The trial judge refused that requested question because there was no evidence that Karrels was negligent. The trial judge, therefore, properly excluded a question about Karrels' negligence. Although, as we held in *Connar v. West Shore Equipment of Milwaukee, Inc.*, 68 Wis.2d 42, 227 N.W.2d 660 (1975), a special verdict question in respect to the negligence of an individual who is not a party may be included in the

verdict, it is necessary that there be "evidence of conduct which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about." (at 45) The trial judge properly concluded that there was no evidence upon which a jury could have found Karrels negligent for the failure to warn or supervise Gierach.

The evidence was sufficient to support the verdict, whether the verdict be viewed in the light of the plaintiff's initial theory that the wrench was negligently designed and manufactured or whether it be viewed in light of the defendant's theory that the accident occurred because of the build-up of grease and dirt within the wrench housing.

There were sufficient facts to support the jury's verdict in respect to negligent manufacture and design, because the evidence showed that the manufacturer represented that the gears were designed to withstand pressures up to 5,000 pounds. Yet, the testimony presented by the defendant's expert indicated that at most a maximum force of 1,000 pounds could have been exerted by Gierach.

Applying the inferences that are appropriate under the *res ipsa* instructions, the jury could reasonably conclude that the instrumentality was within the control of the manufacturer and that the breaking of the gear would not have occurred were it not for some negligence in the manufacture or design.

Looking at the jury verdict in connection with the defendant's theory that the build-up of grime and dirt occasioned the slippage, it is apparent that the evidence showed that the manufacturer was aware of this hazard and yet failed to give any warning or instruction whatsoever in respect to the cleaning or maintenance of the sealed gear housing.

The most difficult question in respect to negligence is one not posed on this appeal at all. Our examination reveals no evidence of negligence on the part of the plaintiff Gierach. Apparently, however, plaintiff's counsel, as a matter of strategy, concluded not to cross-appeal in light of the relatively small amount of reduction of damages occasioned by the jury's attribution of 10 percent of the negligence to Gierach.

The question of the sufficiency of the evidence was posed on motions after verdict; and the trial judge, upon re-examination of the record, concluded that there was ample evidence to sustain the findings of the jury.

While there was evidence submitted by the defendant which, if believed by the jury, would tend to eliminate or minimize any negligence on the part of the defendant, the trial judge correctly pointed out that the jury was not obliged to believe such testimony. It did not.

Our review of the record reveals no error of law, and the evidence was sufficient to support the verdict.

*By the Court.*—Judgment affirmed.