**Raymond CONDER and Wanda Conder, Appellants,**

v.

**HULL LIFT TRUCK, INC., and Allis-Chalmers Corporation, Appellees.**

No. 582S186.

Supreme Court of Indiana.

May 13, 1982.

Alexander Lysohir, Thomas H. Singer, Lysohir & Singer, South Bend, for appellants.

Roland Obenchain, South Bend, for Hull Lift Truck, Inc.

R. Kent Rowe, Rowe & Lederer, South Bend, for Allis-Chalmers Corp.

PIVARNIK, Justice.

This cause comes to us on Allis-Chalmers Corporation's petition to transfer from the Court of Appeals Fourth District. Appellants Raymond and Wanda Conder sued Allis-Chalmers and Hull Lift Truck, Inc., in Elkhart Circuit Court for injuries sustained by Raymond when a forklift truck he was operating overturned. Raymond was riding the forklift truck in connection with his employment by Globemaster Mobile Homes. The lift truck had been leased from Hull Lift Truck and was manufactured by Allis-Chalmers Corporation. The jury's verdict was in favor of both defendants, Hull Lift Truck and Allis-Chalmers. The Court of Appeals affirmed the judgment in favor of Hull Lift Truck but reversed the judgment in favor of Allis-Chalmers because of allegedly improper instructions given by the trial court. *Conder v. Hull Lift Truck, Inc.,* (1980) Ind.App., 405 N.E.2d 538. We find that the trial court was correct in all respects; accordingly we grant transfer and vacate the opinion of the Court of Appeals.

The facts and circumstances of this cause were well enumerated in the Court of Appeals opinion and we adopt that portion of the opinion and incorporate it herein as follows:

"On August 24, 1972, Raymond Conder was operating a forklift truck which his employer, Globemaster Mobile Homes, had leased from defendant Hull Lift Truck, Inc., (Hull). The forklift was manufactured by the defendant Allis-Chalmers Corporation. As Conder was driving outside the Globemaster factory, he approached a rough area in the road where rain water had created a small washout. Although Conder took his foot off the accelerator pedal in order to decelerate, it did not release. His first reaction was to attempt to use his right foot to "unstick" the peddle, (sic) but his efforts failed. Traveling at approximately seven (7) miles per hour, (the vehicle's top speed in low gear) the forklift entered the washed-out area of the road and tipped over, landing on Conder and pinning him to the ground. The resulting

injuries caused the plaintiff to be a paraplegic.

On September 11, 1972, Joseph Bokon, a mechanic, examined the forklift truck to determine whether there had been a mechanical failure or whether Conder's accident had been caused by human error. His examination disclosed that the linkage between the truck's governor and carburetor, specifically the part of the linkage referred to throughout the record as the "adjustable governor control arm," had been misadjusted. It was this misadjustment in the governor linkage which allowed the governor to work just the opposite of its intended function, i.e., instead of slowing the vehicle down, the governor caused the forklift's carburetor to run "wide open," resulting in acceleration to maximum R.P.M. Bokon also found a torsion spring on the carburetor was broken; this spring would have prevented the governor malfunction had it not been in the state of disrepair, notwithstanding the maladjusted governor control arm.

Other evidence showed the forklift in question was leased by Hull to Globemaster on August 17, 1972, eight days before Conder's accident. No maintenance was performed, nor were any adjustments made by Globemaster on the forklift during this period. According to the Globemaster Hull lease agreement, all maintenance, when necessary, was to be performed by Hull.

Conder used the forklift on the 17th, and had no trouble with the accelerator pedal. Between August 17 and August 24, Conder did not hear of any other Globemaster employee having problems with the forklift's accelerator pedal; however, unbeknownst to Conder, two other employees had in fact experienced the very same uncontrolled acceleration problem between the 17th and the 24th. Unfortunatley, no one communicated this fact to Conder.

Conders brought this action based upon theories of strict liability, negligence and willful and/or wanton misconduct. As against Allis-Chalmers, Conders claimed the forklift's design was defective and unreasonably dangerous in two respects: 1) a foreseeable misadjustment of the governor linkage resulted in uncontrolled acceleration, and 2) no warnings were issued to advise of this potential hazard. Conders also alleged Allis-Chalmers was negligent in its design of the forklift and in its failure to warn of the hazards of linkage misadjustment. In a third count, plaintiffs accused Allis-Chalmers of willful and wanton misconduct for failure to warn of the hazard in question.

As against Hull Lift Truck, Conders claimed the forklift truck was defective and unreasonably dangerous in that the torsion spring on the carburetor was either defective and/or broken when delivered to Globemaster, and the carburetor-governor linkage was grossly out of adjustment. Plaintiffs also alleged Hull negligently maintained the forklift, and negligently trained its mechanics."

Further evidence showed that Robert L. Hull, General Manager of Hull Lift Truck, Inc., as a witness for the plaintiffs, testified that sometime around August, 1970, the forklift truck in question was converted by Hull Lift Truck from a gasoline powered engine to a liquid propane gas (L. P. gas) engine. Hull Lift Truck originally rented out the forklift truck on December 1, 1970. The conversion kit which was used by Hull to convert this unit from a gasoline fuel system to an L. P. gas fuel system was obtained either from Allis-Chalmers Parts Central or L. P. Gas Equipment Co., in Franklin Park, Illinois. Hull had purchased conversion kits from both sources and Mr. Hull had no way of knowing which one supplied the conversion kit in question. He testified that his company did take these carburetors apart, which would include taking the letters off the carburetors. The springs that are placed on these carburetors are not purchased from Allis-Chalmers but instead from L. P. Gas Equipment Co.

I.

We agree with the Court of Appeals in its analysis of the trial court judg-

ment in favor of Hull and adopt its language and make it part of this opinion as follows:

"Conders argue the verdict rendered in favor of Hull is contrary to law for the reason that uncontradicted evidence shows Hull was strictly liable for injuries caused by the defective and unreasonably dangerous condition of the forklift. As this is an appeal from a negative verdict, this court cannot reverse as to Hull unless the evidence is without conflict and leads to only one conclusion, the trial court reached a contrary conclusion, and reasonable men could not have found as the trial court did. *Clarke Realty, Inc., v. Clarke,* (1976) 171 Ind.App. 46, 354 N.E.2d 779; *Columbia Realty Co., v. Harrelson,* (1973) 155 Ind.App. 604, 293 N.E.2d 804. We find there was a question of fact for the jury which precludes our reversal.

Conders argue each of the following elements of strict liability were established by the evidence as a matter of law:

1. Defendant Hull was in the business of leasing forklift trucks and did lease a forklift truck which was expected to and did reach the plaintiff Raymond Conder in substantially the same condition as it was leased to his employer.

2. Conder was the user of the forklift.

3. The forklift was in a defective condition and unreasonably dangerous when it left the possession of Hull.

4. The damages Conder claimed were proximately caused by the product's defective condition.

We agree there was overwhelming, uncontradicted evidence to prove the forklift's governor-carburetor linkage was misadjusted at the time the machine was leased to Globemaster. Therefore, the forklift was clearly defective and unreasonably dangerous. The evidence also shows the maladjustment was a cause in fact of the plaintiff's accident. However, we find there was a question of fact which remained for the jury concerning the issue of proximate cause.

Most courts have held the normal proximate cause rules limiting liability to the foreseeable consequences of an action operate in the products liability area as in tort law generally. *See, e.g., Bemis Company, Inc., v. Rubush,* (1980) Ind.App., 401 N.E.2d 48, [*rev'd on other grounds,* 427 N.E.2d 1058]; *Dudley Sports Co. v. Schmitt,* (1972) 151 Ind.App. 217, 279 N.E.2d 266; *see generally* 1 L. Frumer and M. Friedman, *Products Liability* § 11.02 (1976). Proximate cause is established if the injury caused by the defendant is a natural and probable consequence which was, or should have been, reasonably foreseen or anticipated in light of attendant circumstances. *P. H. and F. M. Roots Co. v. Meeker,* (1905) 165 Ind. 132, 73 N.E. 253; *Lake Erie and W. R. Co. v. Charman,* (1903) 161 Ind. 95, 67 N.E. 923. Accordingly, an intervening cause, e.g., the act or omission of a third party, will not operate to defeat a recovery from the defendant if the intervening cause would necessarily, or might reasonably, have been foreseen by the defendant. *Shanks v. A. F. E. Industries, Inc.,* [(Ind.App.1980), 403 N.E.2d 849, *rev'd on other grounds,* 416 N.E.2d 833]; *Dudley, supra; Zahora v. Harnischfeger Corp.,* 404 F.2d 172 (7th Cir. 1968). However, in some instances, the unforeseeable intervening negligent acts of a third party constitute a superseding cause which relieves the defendant of responsibility for the plaintiff's injuries. *See, e.g., General Motors v. Jenkins,* (1966) 114 Ga.App. 873, 152 S.E.2d 796; *Ford Motor Co. v. Wagoner,* (1946) 183 Tenn. 392, 192 S.W.2d 840. The case of *Balido v. Improved Machinery, Inc.,* (1973) 29 Cal.App.3rd 633, 105 Cal.Rptr. 890, is representative of the problem which arises when the issue of intervening causation surfaces in a strict products liability action.

In *Balido,* the plaintiff, an employee of the Olympic Plastics Company, was injured when a defective molding press closed on her hand. The press had been manufactured by Improved Machinery fourteen years prior to the accident. Before the accident occurred, however, Improved notified Olympic that operators of similar presses were being injured and

offered to install safety devices to prevent such injuries. Unfortunately, Olympic chose not to pursue the matter; had the safety equipment been installed, plaintiff Balido would not have been injured. Reversing the decision of the trial court, which directed a verdict in favor of Improved, the California Appellate Court held that the extent to which designers and manufacturers of dangerous machinery are required to anticipate safety neglect presented a question of fact for the jury. It was inappropriate for the lower court to hold Olympic's failure to install the safety device constituted a superseding intervening cause as a matter of law.

As in *Bolido, supra,* the question concerning the foreseeability of intervening third party misconduct is most often held to be a question of fact for the jury's determination. *See, e.g., Sills v. Massey-Ferguson, Inc.,* 296 F.Supp. 776 (N.D.Ind. 1969); *Zahora, supra; Guffie v. Erie Strayer Co.,* 350 F.2d 378 (3rd Cir. 1965).

In the present case, Leroy Graber, a foreman of the receiving department at Globemaster, testified he had primary responsibility for calling a Hull Lift service man when a rented forklift required maintenance. Under the Globemaster-Hull lease agreement, maintenance was to be performed by Hull. Graber testified that during the week prior to Conder's accident, he (Graber) experienced the same over-acceleration problem with the forklift, but was able to stop the machine before an accident occurred. Doyle Weaver, another forklift driver at Globemaster, also experienced the same over-acceleration problem, and informed Graber of this fact. Graber, unfortunately, did nothing to remedy the situation. Because the receiving department was exceptionally busy during the week in question, Graber decided to delay any maintenance on the forklift. The following testimony is particularly revealing:

' "Q. And, Mr. Graber, how was this accelerator problem on that truck supposed to be remedied?
A. The forklift was a rental and I hadn't—I was just hoping that the forklift wasn't around very long.

Q. I see. Mr. Graber, how was Hull Lift Truck supposed to find out about any problems with that Allis-Chalmers if you didn't call them and tell them?
A. Usually we have a slow spot or maybe a slowdown that I try to get maintenance done on these fork lifts, and that was probably the time when I would have tried to correct it or call somebody or—
Q. Wait sometime until it would be more convenient or less inconvenient for the company to call Hull Lift and say, 'We have got an accelerator sticking on on your tractor. Could you come out and find out what is the matter?'
A. Yes, sir."

Not only did Graber fail to call Hull and request maintenance for the forklift, he also failed to even warn Conder of the problem of over-acceleration, despite the fact he knew Conder was using the machine.

"Had Graber requested maintenance for the forklift, or at least warned the plaintiff of the hazard associated with its operation, the accident could have been avoided. The jury may well have found this failure to act on the part of Globemaster's foreman, once the hazardous condition of the forklift became apparent, constituted an unforeseeable intervening cause of the plaintiff's accident, thereby insulating Hull from liability. Proximate cause in this case was clearly a question of fact for the jury and for this reason the jury verdict must remain undisturbed."

## II.

■ The position of Allis-Chalmers is well taken that the same unforeseeable intervening cause of Conder's accident that insulated Hull from liability also insulated Allis-Chalmers. In fact, Allis-Chalmers is even further removed from the point of cause since not only was there the intervening acts of Globemaster but there was evi-

dence that Hull had committed acts that could be considered intervening since the equipment was put on the market by Allis-Chalmers. Hull leased the equipment to Globemaster in the defective condition that caused the injuries. Hull converted the carburetion system from gasoline to L. P. gas which may or may not have had Allis-Chalmers conversion kit parts and which required the dismantling and rebuilding of the carburetor in the parts that were pertinent to the defects here. Springs were used that were not manufactured by Allis-Chalmers and that were prone to break quite frequently according to the evidence.

Robert Slabaugh, a mechanic employed by Hull Lift Co., was in charge of periodic maintenance on the forklift vehicle involved in this accident. Mr. Slabaugh testified that prior to Conder's accident he replaced a broken governor spring and on another occasion installed a rebuilt carburetor, adjusted the carburetor and checked to make sure that the governor linkage was properly adjusted. He said he never attended any of the service schools offered by Allis-Chalmers, although they did come out to the job site and give instructions, but Slabaugh did not remember any schooling dealing with adjusting the carburetor system or with the L. P. gas system. Slabaugh learned how to adjust the carburetor system on these units from Warren Kline, a fellow employee, and that he knew how to adjust the carburetor linkage to the carburetor. During his testimony he described the proper method of adjustment and stated that that was the way he adjusted the governor linkage on the carburetor. He also knew that if the governor lever was in a horizontal position and the spring was broken, the arm would fall below center and the vehicle would run wide open as it did for Conder in this accident. He said this was a matter of simple mechanics that he knew and that he did not need a warning sign on the engine or any literature published by Allis-Chalmers or anyone else to know it. He further testified that in periodic maintenance inspections, he would find that people who used the machines had unhooked the governors, removed stops, wired the governors open or lengthened the linkage to give them more speed. He found this happened often in the field.

The jury had all of this evidence before it. The jury therefore could well have found that the failure to act on the part of Globemaster and Hull constituted an unforeseeable intervening cause of the plaintiff's accident and therefore no act, nor failure to act, on the part of Allis-Chalmers, was a proximate cause in this case. The evidence was that Allis-Chalmers had never been advised by Hull, Globemaster, or anyone else concerning the linkage problem involved here.

### III.

In view of the above facts and circumstances, the problems found by the Court of Appeals to exist in the instructions to the jury regarding Allis-Chalmers, if in fact they were improper, cannot be said to have contributed to the verdict and, therefore, were, at most, harmless error.

■■■ Allis-Chalmers' instruction No. 5, which was given by the court, stated:

"Ladies and gentlemen of the jury, you are further instructed that under the laws of this State, the Defendant, Allis-Chalmers Corp., was not and is not an insurer or guarantor in regard to the quality of its product and is not required to manufacture or produce a product which is perfect or accident proof. Neither is the defendant, Allis-Chalmers Corp. liable for any and all accidents or damage which arise out of or which may occur by reason of the use of its products. The law only requires that the defendant, Allis-Chalmers Corp., produce a product which at the time of its manufacture and sale to a third person be reasonably safe for the use for which it is intended."

Plaintiff's objection to this instruction was that it was improper for the court to tell the jury that Allis-Chalmers was not an insurer or guarantor in regard to the quality of its product. Plaintiff seems to equate quality of the product with the ability of that product to be reasonably safe for its

intended use. Perhaps it was a poor choice of words as quality is a rather general term and can be given different meanings depending on the connotations of the context in which it is used. It is true, however, that a manufacturer or seller is not liable for every failure of its product which results in injury and is liable only if the product contains a defective condition rendering it unreasonably dangerous. *Shanks v. A. F. E. Industries, Inc.*, (1981) Ind., 416 N.E.2d 833, 834; *Ayr-Way Stores, Inc. v. Chitwood*, (1973) 261 Ind. 86, 93, 300 N.E.2d 335, 339; *Cornette v. Searjeant Metal Products, Inc.*, (1970) 147 Ind.App. 46, 52, 258 N.E.2d 652, 656.

Other instructions given by the court covered this area well, including plaintiff's tendered instruction No. 2 given as follows: "Although a manufacturer of a fork lift truck has no duty to make an accident proof fork lift truck, he is legally bound to use reasonable care to design and build a fork lift truck which is reasonably fit and safe for the purpose for which it was intended . . . . "

■ Allis-Chalmers' instruction No. 7 instructed the jury that if plaintiff's injuries were solely and proximately caused by the conduct of defendant Hull Lift Truck, Inc., or Raymond Condor himself or that of his employer or any combination of these, then the verdict should be for Allis-Chalmers Corporation. It is plaintiff's contention here that this instruction was tantamount to telling the jury that contributory negligence was a defense to strict liability theory of products liability. This instruction, however, told the jury that if the *sole* proximate cause of the accident was from sources other than Allis-Chalmers, then the verdict should be in favor of Allis-Chalmers. The court further instructed the jury in plaintiff's requested instruction No. 10 that contributory negligence was not a defense to a defective product theory of recovery. Therefore, the instructions considered together, as they are supposed to be, properly instructed the jury on this subject. *Palmer v. Decker*, (1970) 253 Ind. 593, 601, 255 N.E.2d 797, 801; *School City of Gary v.*

*Claudio*, (1980) Ind.App., 413 N.E.2d 628, 636; *American Optical Co., v. Weidenhamer*, (1980) Ind.App., 404 N.E.2d 606, 622.

■ Allis-Chalmers' instruction No. 10 was as follows:

"Ladies and gentlemen of the jury, I instruct you that with respect to the theories of negligence, and/or strict liability, the defendant, Allis-Chalmers Corp., as a manufacturer, in preparing instructions or warnings regarding its product was not required to warn of potential dangers resulting from the misuse or substantial change of such products by others."

This instruction must also be considered with all other instructions given to the jury. Instruction number 8 given by the court informed the jury that if changes are foreseeable then liability would attach notwithstanding the fact that changes were made by others. Defendant's instruction No. 4 advised the jury that Allis-Chalmers did not have to foresee substantial changes. It would be an impossible task to require a manufacturer to give warnings to a user of all the ways in which a unit or any component of that unit might be misused. In *Perfection Paint and Color Company v. Kondouris*, (1970) 147 Ind.App. 106, 258 N.E.2d 681, quoting from *Cornette v. Searjeant Metal Products, supra*, the Court of Appeals wrote " . . . defense of misuse is available when the product is used 'for a purpose not reasonably foreseeable to the manufacturer' or when the product is used 'in a manner not reasonably foreseeable for a reasonably foreseeable purpose.' " It is only when a change or modification could be reasonably foreseen by the manufacturer to be a safety hazard and would not be apparent to the consumer or user that there could be liability of the manufacturer. Court's instruction No. 8, together with the other instructions given, advise the jury of this.

### IV.

We agree with the analysis of the Court of Appeals in regard to plaintiff's instruction No. 9 and plaintiff's instruction No. 19 and adopt its language and make it part of this opinion as follows:

"Plaintiffs' Instruction No. 9, which was refused by the trial court, related to their theory that Allis-Chalmers engaged in willful and wanton misconduct when it failed to issue warnings concerning the hazards associated with misadjustment of the forklift's governor-carburetor linkage. The instruction read, in relevant part:

> 'Willful or wanton misconduct means a course of action on the part of the defendant Allis-Chalmers Corporation which under existing conditions, show either an utter indifference or conscious disregard for the safety of others. Thus if you find that the defendant Allis-Chalmers Corporation had actual knowledge that the design of its forklift truck was defective in that it did foresee that there was a hazard which could result from foreseeable misadjustments during the course of anticipated maintenance, and that it knew that some personnel that would be servicing and maintaining said unit would not recognize or appreciate the hazard resulting from the misadjustments in question, and that the defendant Allis-Chalmers Corporation deliberately and intentionally did not warn of the hazard in question, then you may find that Allis-Chalmers Corporation was guilty of willful or wanton misconduct.'

Appellants argue there was sufficient evidence to support this instruction and it therefore should not have been refused. Allis-Chalmers argues this instruction was an incorrect statement of the law concerning willful and/or wanton misconduct. We agree.

Two elements must be established by the evidence to fix liability for willful and wanton misconduct. First, the defendant must have knowledge of an *impending* danger or have been conscious of a course of misconduct calculated to result in *probable* injury. Second, the defendant's actions must have exhibited his indifference to the consequences of his conduct. *Clouse v. Peden*, (1962) 243 Ind. 390, 186 N.E.2d 1; *Brown v. Saucerman*, (1957) 237 Ind. 598,

145 N.E.2d 898. It is the *probability* or *likelihood* of injury which justifies the labeling of the defendant's conduct as reckless or wanton, as opposed to merely negligent.

Plaintiff's Instruction No. 9 would have informed the jury that liability for willful and wanton misconduct could attach if Allis-Chalmers knew "a hazard . . . *could* result from foreseeable misadjustments during the course of anticipated maintenance." However, conduct which merely *could*, or *might possibly* result in injury does not amount to willful and wanton misconduct. Therefore, plaintiffs' instruction No. 9 was an inaccurate statement of the law and was properly refused.

Appellants also argue the trial court erred by refusing plaintiffs' Instruction No. 19 on substantial change. We hold the instruction was properly denied.

Instruction 19 read as follows:

> 'In order to prove that there was a substantial change in the forklift truck after it left the factory of Allis-Chalmers Corporation, it must be shown by a preponderance of the evidence that the forklift truck which turned over on Raymond Conder had undergone change which was:
>
> (1) Substantial; and
>
> (2) Not reasonably foreseeable by the defendant Allis-Chalmers Corporation; and
>
> (3) Contributed to the defect which caused the injury to Raymond Conder.'

We acknowledge the general rule that it is error for a trial court to refuse to define in its instructions technical and legal phrases in connection with material issues of the lawsuit if property requested to do so. *Love v. Harris*, (1957) 127 Ind.App. 505, 143 N.E.2d 450. The term "substantial change" is undoubtedly a word of art in the law of strict liability. *Cornette, supra*. However, subsection (1) of Instruction No. 19 was redundant, and potentially confusing. It would have told the jury that in order for a change to be considered a substantial change, it had to be

"substantial." Subsections (2) and (3) of the instruction properly define substantial change without this verbiage. Therefore the trial court was justified in refusing the instruction as tendered by the plaintiffs."

Transfer is granted, the opinion of the Court of Appeals is vacated, and the judgment of the trial court is in all things affirmed.

GIVAN, C. J., and PRENTICE, J., concur.

HUNTER, J., dissents with opinion in which DeBRULER, J., concurs.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. The opinion and decision of the Court of Appeals, found at *Conder v. Hull Lift Truck, Inc.,* (1980) Ind.App., 405 N.E.2d 538, should not be disturbed. Therein, the Court of Appeals affirmed the judgment entered in favor of Hull Lift Truck, Inc., but reversed the judgment entered in favor of Allis-Chalmers Corporation and remanded the cause for a new trial on the basis of various errors in the final instructions given to the jury.

Prior to its analysis of the instructional errors upon which the Court of Appeals predicated its decision, the majority concludes that "if in fact they [the instructions] were improper," the instructions "cannot be said to have contributed to the verdict and, therefore, were, at most, harmless error." *See Majority Opinion, supra.* The majority's conclusion stems from its extensive recitation of testimony elicited from Robert Slabaugh, a mechanic employed by Hull Lift. As the majority points out, Hull Lift had leased the forklift vehicle to Globemaster, plaintiff Conder's employer; pursuant to the lease agreement, Hull Lift retained all responsibility for maintenance of the forklift vehicle.

Slabaugh was in charge of periodic maintenance on the forklift vehicle involved in the accident; as the majority acknowledges, he would often find that people had adjusted the carburetor in various manners, such as unhooking the governor, wiring the governor open, lengthening the linkage, or removing stops, all designed to provide more speed. While Slabaugh would discover these adjustments during his periodic maintenance inspections of the vehicle, the record also reveals, as the Court of Appeals emphasized, that Slabaugh was not the person who last serviced the vehicle before Conder's accident. *Conder v. Hull Lift Truck, Inc., supra* at 547.

Slabaugh's testimony consequently cannot be regarded as conclusive of the question whether Allis-Chalmers negligently failed to warn of the hazards associated with the carburetor assemblage. Whether proper warnings might have prevented the accident remained in doubt, a factual question for the jury to resolve. To properly resolve the issue, it was necessary that the jury be properly instructed on the law it should apply; we cannot say that any error in the final instructions was necessarily harmless. *Harper v. James,* (1965) 246 Ind. 131, 203 N.E.2d 531; *Birdsong v. I. T. T. Continental Baking Company,* (1974) 160 Ind.App. 411, 312 N.E.2d 104; *Summers v. Weyer,* (1967) 141 Ind.App. 176, 226 N.E.2d 904.

The majority further errs in its analysis of the instructional questions which prompted the Court of Appeals to reverse the judgment entered in favor of Allis-Chalmers. The Court of Appeals properly found the trial court erred in giving Allis-Chalmers's instructions numbered 5, 7, and 10.

Instruction number 5 informed the jury that Allis-Chalmers "was not and is not an insurer or guarantor in regard to the quality of its product and is not required to manufacture or produce a product which is perfect or accident proof." The majority describes the language as "perhaps ... a poor choice of words," yet tacitly approves its substance on the rationale that "a manufacturer or seller is not liable for every failure of its product which results in injury."

Nobody would properly argue that a manufacturer or seller is liable for every

injury suffered in connection with a product. The "failure" of a product, however, whether it be caused by improper design or a defect in quality, is precisely what triggers product liability—assuming the failure was the cause of the injury. The majority's language, as well as the instruction, as the Court of Appeals noted, strikes directly at one of the most fundamental considerations underlying Section 402A of the *Restatement (Second) of Torts* —that the manufacturer represents to the public that its product is reasonably safe for its intended or reasonably foreseeable use, and that the public justifiably relies on that expectation. *Restatement (Second) of Torts*, § 402A, Comment c; *see also*, Prosser, *The Assault on the Citadel*, 69 Yale L.J. 1099 (1960); Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function, and Legal Liability for Product Disappointment*, 60 Va.L.Rev. 113 (1974).

The Court of Appeals recognized that the instruction was wholly at odds with the law of products liability and more than a mere poor choice of words. It properly held that the instruction should not have been given.

Allis-Chalmers's instruction number 7 informed the jury that if the conduct of either Raymond Conder, his employer, or Hull Lift Truck was the cause of the accident, Allis-Chalmers was not liable. As the Court of Appeals noted, there was absolutely no evidence that Conder's own conduct contributed to the accident. There is no indication that he misused the machine or that he altered it in any way. The instruction was inappropriate to the evidence, confusing to the jury, and should not have been given.

Allis-Chalmers's instruction number 10 informed the jury that Allis-Chalmers "was not required to warn of potential dangers resulting from the misuse or substantial change of such products by others." On the basis that the instruction failed to incorporate the element of foreseeability with respect to *misuse* of the product, the Court of Appeals found it improper. Judge Chipman spoke for the unanimous court:

"The environmental approach to product use assumes a manufacturer markets a product for an intended use. This is not to say, however, that in considering design alternatives, including various instructions and warnings, a manufacturer may simply close his eyes to hazards associated with foreseeable misuse of the product. Accordingly, the defense of misuse is available only when the product is used in a manner not reasonably foreseeable. *Perfection Paint & Color Co. v. Konduris*, (1970) 147 Ind.App. 106, 258 N.E.2d 681; *Cornette, supra*, (concurring opinion). Similarly, the failure to warn of hazards associated with foreseeable misuse of a product may render the product unreasonably dangerous. *Wolfe v. Ford Motor Co.*, (1978) Mass.App., 376 N.E.2d 143; *Frey v. Montgomery Ward & Co., Inc.*, (1977) Minn. 258 N.W.2d 782; *Featherall v. Firestone Tire and Rubber Co.*, (1979) Va., 252 S.E.2d 358; *Gierach v. Snap-On Tools*, (1977) 79 Wis.2d 47, 255 N.W.2d 465.

"To require manufacturers to consider product design in light of foreseeable product misuse, and to warn of hazards associated with foreseeable product misuse, is consonant with another major policy basis advanced for the adoption of strict products liability: the safety incentive rationale. This rationale assumes it is in the public interest to fix financial responsibility for a product injury wherever it will most effectively reduce hazards to life and health inherent in products that reach the market. *Escola v. Coca-Cola Bottling Co.*, (1944) 24 Cal.2d 453, 150 P.2d 436 (Traynor, J., concurring). When product misuse and its attendant risks is reasonably foreseeable, the manufacturer is in the best position to avoid product related injuries through safety design.

"Allis-Chalmers argues the term 'misuse' as used in Instruction No. 10 'implies a lack of foreseeability.' However, there is nothing in the wording of this instruction which directs the lay juror to consider the element of foreseeability; indeed the jury may well have applied the usual and

much narrower lay definition of misuse (i.e., improper use, abuse, or abnormal use) without considering the uses of the product in the environment which should reasonably have been foreseen by the manufacturer." *Conder v. Hull Lift Truck, Inc., supra* at 546 [footnotes omitted].

This analysis reflects recognition of the rationale behind products liability law.

The majority of this Court, however, finds no error in the statement that a manufacturer is "not required to warn of potential dangers resulting from misuse." It finds the statement acceptable on the basis that the element of foreseeability was incorporated into other instructions. Those instructions, however, related to "substantial changes," not "misuse." The defenses are distinct in product liability analysis.

In addition, the majority suggests "It would be an impossible task to require a manufacturer to give warnings to a user of all the ways in which a unit or any component of that unit might be used." *Majority Opinion, supra.* Yet, as the majority acknowledges, if a misuse is foreseeable and the resultant danger is not apparent, then the manufacturer's responsibilities are triggered. The instruction failed to embody those rules of law, and for that precise reason the Court of Appeals properly found that it was an improper instruction.

Finally, it is noted that with respect to each of the instructions found erroneous by the Court of Appeals, the majority has relied on other instructions to support its conclusions that the instructions were proper. It is true, of course, that instructions are to be construed together. *Palmer v. Decker,* (1970) 253 Ind. 593, 255 N.E.2d 797. This Court has also recognized that an improper instruction cannot necessarily be cured by the giving of a proper instruction, for the result leaves the jury to determine which of the contradictory propositions of law it should apply. *Harper v. James, supra.* In implementing other instructions to buttress its conclusions with respect to Allis-Chalmers's instructions 5 and 10, the majority has violated the rule of *Harper v. James,*

*supra,* for those instructions were cast in terms wholly contrary to both the letter and spirit of products liability law, as the Court of Appeals emphasized.

I dissent; Allis-Chalmers's petition to transfer should be denied.

DeBRULER, J., concurs.