BLACKWELL BURNER COMPANY, INC., Appellant,

v.

Felipe P. CERDA, Sr., Appellee.

No. 16752.

Court of Appeals of Texas, San Antonio.

Sept. 29, 1982.

Rehearing Denied Nov. 18, 1982.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Phillip D. Hardberger, Hardberger & Herrera, Inc., San Antonio, Joe D. Jarrard, Jr., Asst. Atty. Gen., Austin, for appellee.

Before KLINGEMAN, BUTTS, CLARK and REEVES, JJ.

## OPINION

REEVES, Justice.

Suit was brought against the manufacturer of a pear burner to recover, under the theory of strict liability, for burns sustained by plaintiff while using a pear burner. The district court entered a judgment on the jury's verdict for plaintiff and the manufacturer appealed. Judgment reversed and remanded.

Appellant, Blackwell Burner Company, Inc. (Blackwell) sold the Texas State Department of Highways and Public Transportation,[1] a quantity of pear burners. A pear burner is a pressure vessel device made of a metal tank which serves as a container for kerosene; attached to the tank is a flexible rubber hose with a tip or wand at the end of the hose which emits a flame of fire, and a pump to create the pressure in the metal tank. It is used by cattlemen to burn prickly pear cactus; hence the name pear burner. It is used by the highway department to heat asphalt to a degree where the material becomes pliable or soft enough to patch highways.

On February 23, 1976, appellee, Felipe P. Cerda, Sr. (Cerda) was working as foreman of a five-man highway department crew doing asphalt patch work on a public highway. Just prior to the accident, Cerda and a co-worker were standing in the bed of a dump truck using two burners to heat cold asphalt. There is some conflict between the witnesses as to the location of Cerda immediately prior to the accident, but it is uncontroverted that the hose on the pear burner that Cerda was using became disconnected from the pressure tank causing kerosene to spew on Cerda. The kerosene caught fire and Cerda was burned.

Cerda went to work for the highway department in 1966 as a maintenance man. He performed general maintenance work such as mowing the grass, patching highways, and repairing rails situated on the

1. Texas Department of Highways and Public Transportation was a party in the trial court as intervenor to recoup workers compensation benefits.

right-of-way of highways. By the date of the accident, he had been promoted to crew chief. During the ten years he had worked with the highway department he had used a pear burner many times. In fact, Cerda testified that he had used a pear burner at the age of 15 years while assisting his father on a ranch.

On the date in question, Cerda was using a Blackwell manufactured pear burner that he had never used before. This particular pear burner, in lieu of a clamp the manufacturer used to secure the wand to the hose, was secured by a piece of bailing wire. There was testimony from a maintenance employee of the highway department that bailing wire secured the wand to the hose better than the clamp. An expert witness called by Blackwell stated that in his opinion the cause of the accident was the use of the bailing wire in the place of the clamp. Cerda testified that he had never seen or heard of the hose separating from a pear burner. The equipment contained no warning or instructions how to use the device.

Appellant's first three points of error are closely related to each other and will be considered together. They are:

1. Legal insufficiency of the evidence to support the finding of the jury that failure to place a warning on the pear burner rendered it defective.

2. Legal insufficiency of the evidence that the absence of a warning was a producing cause of the accident.

3. The failure of the jury to find that Cerda had assumed the risk was against the great weight and preponderance of the evidence and therefore manifestly wrong and unjust.

Cerda's action is grounded upon strict liability.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection 1 applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Second) of Torts* § 402A (1905).

The defense of assumption of the risk in strict liability cases is set out in comment n to § 402A:

[T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceed unreasonably to make use of the product and is injured by it, he is barred from recovery.

*Restatement (Second) of Torts* § 402A comment n (1965).

The theory of products liability expressed in § 402A of the *Restatement of Torts* has been adopted by the Supreme Court of Texas. *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 789 (Tex.1967). As used in the *Restatement,* the terms "defective" and "unreasonably dangerous," are synonomous. *Mitchell v. Fruehauf Corporation,* 568 F.2d 1139, 1142 n. 1 (5th Cir. 1978).

The Supreme Court in *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602 (Tex.1972) defined a product as unreasonably dangerous or defective when an ordinary man would not have marketed the product without "supplying warnings as to risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers." *Id.* at 605. Moreover, "[i]mplicit in the duty to warn is the duty to

warn with a degree of intensity that would cause a reasonable man to exercise for his own safety precuation commensurate with the potential danger." *Bituminous Casualty Corporation v. Black & Decker Manufacturing Co.,* 518 S.W.2d 868, 872 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.).

■ A manufacturer can be found responsible through the doctrine of strict liability even though its product is faultlessly manufactured and designed, if the product marketed is unreasonably dangerous or likely to harm the user unless properly used. In such case the product would be in a defective condition and unreasonably dangerous by virtue of the absence of the adequate warnings. *Lopez v. Aro Corporation,* 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). The manufacturer has a duty to warn against foreseeable misuse and improper maintenance. *See Bristol-Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978); *Gierach v. Snap-on Tools Corp.,* 79 Wis.2d 47, 255 N.W.2d 465, 468 (1977). There was evidence introduced that a pressure vessel can be dangerous if not used properly. Indeed the handbook that Blackwell sought to introduce into evidence advised that careful inspection should be given pressure vessels.

■ An expert witness for the plaintiff gave his opinion that Blackwell should have placed a warning and instructions on the burner. He suggested a label stating:

DANGER
Color Red
THIS EQUIPMENT COULD CAUSE <u>SEVERE BURNS</u> <u>TO YOUR BODY</u> or <u>DEATH.</u> You should:

1. Check all connections for tightness, cracks or leakage.
2. Use <u>ONLY</u> replacement parts authorized by manufacturer.
3. Use <u>ONLY</u> maintenance and repair procedures authorized by manufacturer.
4. Never pull or jerk on hoses.
5. Follow operating instructions.
6. Use only kerosene in the container.

If you do <u>NOT</u> follow the above steps this equipment could cause <u>SEVERE BURNS TO YOUR BODY</u> or <u>DEATH.</u>

A sign of this type would not only serve as a checklist for the operator each time he used the equipment, but it would serve as a constant reminder that the equipment could cause serious physical injury. The warning placed on a lawn mower calling attention to the user to not put hand or foot close to the blades while the mower is in operation is not given so much as an instruction how to use the lawn mower but as a warning. It is common knowledge by every user of a lawn mower that serious injury will result if a hand or foot comes in contact with the blades while the mower is in operation. The primary purpose for the warning is the constant reminder that the mower can seriously injure the user. There is a rebuttable presumption that a user of a product would read a warning if one has been given. *Technical Chemical Company v. Jacobs,* 480 S.W. 2d 602, 605 (Tex.1972). We hold that there is evidence to support the jury finding that the failure of appellant to place a warning on the pear burner rendered it defective.

■■ Whether the failure to warn was a producing cause of the accident must be considered with the assumption of risk issue. If the party to be warned was aware of the potential danger or if the user of a product had knowledge of the danger, the failure of the manufacturer to warn would not be the producing cause of the accident. *Hagans v. Oliver Machinery Co.,* 576 F.2d 97, 102 (5th Cir.1978); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 466–67 (5th Cir.1976). *See* Keeton, *Products Liability-Inadequacy of Information,* 48 Texas L.Rev. 398, 399 (1970). Additionally, if a user of a product is aware of the risk and then voluntarily uses the product, he assumes the risk. *Henderson v. Ford Motor Company,* 519 S.W.2d 87 (Tex.1974), *overruled on other point, Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 (Tex.1979).

■ If Cerda assumed the risk by using the pear burner, the warning defect would not be the producing cause of his injury since the failure to warn an individual of a risk which he is already aware of cannot be the producing cause of his accident. *See Hagans v. Oliver Machinery Co., supra; Martinez v. Dixie Carriers, Inc., supra.* In reviewing the sufficiency of the evidence on producing cause and assump-

tion of the risk, we must review the jury finding in the light most favorable to it, considering only the evidence and inferences which support the finding and rejecting the evidence and inferences contrary to the finding. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263, 265 (Tex.1974).

 Blackwell had been selling the highway department pear burners for some time. Although this was the first time that Cerda had used this particular pear burner, he had been using Blackwell pear burners for years. The maintenance workers, the supervisors, the purchasing department and other employees of the highway department were familiar with the Blackwell pear burners. Had the pear burner carried a warning and instructions on the tank, it probably would have been read by some of the highway department personnel. There was contradictory evidence as to whether the pear burner was probably repaired by using bailing wire to secure the wand. On cross-examination an expert witness called by Blackwell stated the cause of the accident was the use of the bailing wire in place of the clamp. But the critical evidence concerning potential assumption of the risk is that which sheds light on whether the injured party "voluntarily exposed [himself] to the risk with knowledge and appreciation of the danger." *Henderson v. Ford Motor Company,* 519 S.W.2d 87, 91 (Tex.1974), *overruled on other point, Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 (Tex. 1979).

 Cerda testified as follows:

Q: Mr. Cerda, I believe you told us previously that you were well experienced in the use of the weed burners on February 23, 1976, did you not?

A: Yes, sir.

Q: And, as a matter of fact, you had used weed burners since you were a young man at about 15 years of age?

A: Yes, sir.

\* \* \* \* \* \*

Q: Okay. So that was well over 15 years experience in using weed burners?

A: Yes.

Q: And then after you went with the highway department back on January 1, 1966?

A: It was June 1st.

Q: Okay. *And within six months after that you began using weed burners on an everyday basis, except for days where it was rainy weather?* (Emphasis ours.)

A: Yes, sir.

\* \* \* \* \* \*

Q: Now, on the day of the accident, of course, you knew that that weed burner was kerosene operated?

A: Yes, sir.

Q: Alright. And you knew that kerosene was a flamable substance?

A: I knew.

Q: You were actually the one, that poured the kerosene into the weed burner on the date of the accident?

A: Yes, sir.

Q: And you knew it was air-pressurized?

A: Yes, sir.

Q: And you knew, of course, there was a flame coming out of the jet after you get it operating?

A: Yes, sir.

Q: So it's fair to say that you knew how to use the weed burner and no one really needed to tell you how to use or operate it, isn't it?

A: That's true.

\* \* \* \* \* \*

Q: It was obvious to you on February 23, 1976, that you did not want to jerk or yank on this hose connection, was it not?

A: Right.

\* \* \* \* \* \*

Q: And, of course, if you had inspected the weed burner on the day of the accident, you would have known that this piece of bailing wire was wrapped around the hose?

A: If I would have inspected it, yes, sir.

**518**

Q: And, of course, you were crew chief on February 23, 1976?

A: Yes, sir.

Q: And you had four men under your supervision?

A: Yes, sir.

\* \* \* \* \* \*

Q: And you knew to inspect the equipment?

A: Sir?

Q: You knew to inspect the equipment?

A: Would you repeat the question?

Q: And you knew on February 23, 1976, to inspect the equipment?

A: That I was to inspect the equipment?

Q: Yes, sir, the equipment that you would be using or that your men might be using.

A: Yes, sir.

Because of his constant use of pear burners on a daily basis for ten years, Cerda was aware of the need to inspect the device before using it and that the hose connection should not be subjected to stress or pulling. He voluntarily exposed himself to danger of injury by using a product, the potential risks of use of which he was fully acquainted with. We hold that while there is some evidence to support the jury finding of no assumption of the risk, that finding is so against the great weight and preponderance of the evidence that the judgment ought to be reversed and remanded. *E.g. Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209–210 (1950). Having found the evidence insufficient to support the issue on assumed risk, we must necessarily hold that the evidence is also insufficient to support the issue that the warning defect was the producing cause of the injury.

Appellant's fourth point of error contends the trial court erred in prohibiting the introduction of a safety handbook issued to employees of the Highway Department.

The trial court permitted into evidence a receipt signed by Cerda in which he acknowledged that he had received and had become familiar with a booklet styled *Handbook of Safety Practices* published by the Highway Department. Subsequently, Cerda objected to the book's introduction into evidence asserting that it was not relevant in that the book contained many instructions concerning cables, hand tools, vehicle and traffic safety, etc., but only a relatively few instructions that would be applicable to a weed burner or pear burner, and that such tool was not specifically mentioned in the book. The court sustained the objection. The handbook did contain a section about boilers and other pressure vessels which cautioned the employee as to the use and daily inspection of the tool. There were other safety and maintenance instructions in the book. Cerda's witnesses testified that the pear burner constituted a "pressure vessel" and related the dangerous characteristics of this type of tool, and the need for instructions as to its maintenance and proper care.

The jury found that Cerda did not receive adequate warning and the entire liability of Blackwell turned on that point. In *Hamilton v. Motor Coach Industries, Inc.,* 569 S.W.2d 571, 576, 578 (Tex.Civ.App.—Texarkana 1978, no writ), a workman was injured while attempting to repair a spring loaded air cylinder on a bus. The manufacturer of the cylinder knew this spring was a hazard to one who might attempt to repair the cylinder. A warning was provided in the parts manual, which accompanied each bus sold, but no warning was placed on the cylinder itself. The court, in reversing and remanding a directed verdict for the manufacturer, held that under the facts of the case, a jury question was presented on whether the ultimate user was sufficiently warned.

In *Reeves v. Power Tools, Inc.,* 474 F.2d 375 (6th Cir.1973), the court held that a warning contained in the service manual was sufficient as a matter of law to warn the ultimate user. It is our opinion that the court erred in excluding this evidence and that the error complained of was reasonably calculated to cause and probably did cause a rendition of an improper judgment.

 Appellant contends, in its fifth point of error, that its special exception to Cerda's pleading that the pear burner was defectively designed in failing to include "adequate warnings permanently affixed to the tank, to alert users to the hazards, risks and dangers associate with the pear burner's foreseeable use conditions," should have been sustained as the allegations were excessively general. The trial court is granted a large measure of discretion in passing on exceptions to the pleadings and in the absence of showing of abuse of discretion or injury resulting from the trial court's ruling, the ruling will not be disturbed. *Finch v. McVea,* 543 S.W.2d 449, 452 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.), *City of Abilene v. Jones,* 355 S.W.2d 597, 600 (Tex.Civ.App.—Eastland 1962, no writ); *Southern Underwriters v. Hodges,* 141 S.W.2d 707, 711–712 (Tex.Civ.App.—Waco 1940, writ ref'd). Reviewing plaintiff's petition, in its entirety, we are of the opinion that the plaintiff adequately plead his cause of action to the extent that the defendants could prepare their defense.

 Appellants' point of error number six complains that the trial court erred in submitting the following special issue: "Do you find from a preponderance of the evidence that the failure of Blackwell Burner Company, Inc., to place any warnings on the Model "O" burner rendered it defective?" Appellant contends that the special issue is global in nature. We note that in point of error number six, the appellant asserts that the court erred in submitting a general charge. Since the alleged error preserved was called to the court's attention as an issue that was too global in nature, we will consider that point.

 Rule 277, Texas Rules of Civil Procedure permits the trial court, at its discretion, to submit broad issues to the jury. An issue is not now objectionable because it is general. In *State v. Norris,* 550 S.W.2d 386, 387 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), an issue inquiring as to a malfunctioning condition of a traffic light was approved. In *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 924–925 (Tex.

1981), our Supreme Court approved the submission of a special issue of failure "to follow approved safety practices for pulling wet tubing." We overrule point of error six.

Appellant's seventh point of error states that the trial court erred in instructing the jury that there is a rebuttable presumption in favor of the user of a product that a warning would have been read had it been given. This presumption comes from the decision in *Technical Chemical Co. v. Jacobs, supra,* in which the Supreme Court set forth the following principles:

[T]he presumption is that [the user] would have read an adequate warning. The presumption, may, however, be rebutted if the manufacturer comes forward with contrary evidence that the presumed fact did not exist .... Depending upon the individual facts, this may be accomplished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning.

*Id.* at 606. Blackwell cites *Armstrong v. West Texas Rig Co.,* 339 S.W.2d 69 (Tex. Civ.App.—El Paso 1960, writ ref'd n.r.e.) which quoted Professor McCormick's work on evidence as follows:

Under the more generally accepted view (and the Texas view) that the sole effect of the presumption is to fix the burden of producing evidence, obviously presumptions are nothing more than rules for the guidance of the trial judge in locating a burden at a particular time. The court first has to determine whether the opponent has produced sufficient evidence to support a finding of the non-existence of the presumed facts; if so, the case will proceed as if no one had ever heard of the presumption. *If such evidence is not produced, the jury will be directed either absolutely or conditionally to find the presumed fact.* In a situation where the party against whom the pre-

sumption works has the burden of persuasion, as well as the burden of producing the evidence, the presentation will have *no* effect whatsoever. Thus it would seem to logically follow that no instruction to the jury is required. (Emphasis ours.)

*Id.* at 74. We have not found, nor has Blackwell pointed out, any testimony or evidence that would overcome the presumption which we are compelled to follow enunciated in *Technical Chemical Co. v. Jacobs, supra.*

According to Blackwell's authority, the court should have given an instruction that the jury should presume that Cerda, et al would have read a warning had it been given. We overrule appellant's seventh ground of error.

Appellant's eighth point claims error in the refusal of the trial court to submit an issue or instruction on the subject of substantial change (use of bailing wire to secure the wand to hose instead of a clamp) on the burner between the time of the sale and the time it was used by Cerda.

It was the Maintenance Department of the Highway Department that repaired the pear burner and used the bailing wire. This was the first day Cerda had used this particular pear burner.

■ Assuming that the use of bailing wire to secure the wand was a substantial change, it was not done by Cerda. In *General Motors v. Hopkins*, 548 S.W.2d 344 (Tex.1977), *overruled on other point, Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 (Tex.1979), a carburetor was substantially altered by the injured party. The alteration could have been a proximate cause of the accident but the issue was not properly presented to the trial court. The court held that if the alteration constituted an unforeseeable misuse by the injured party it would be a defense mitigating damages but only if the injured party was the actor who substantially altered the carburetor. The court said "we reject misuse as a defense where the product is dangerous for its foreseeable use and the danger is a producing cause of the injury of a bystand-er or a user who has not himself made some unforeseeable use of the product." *Id.* 548 S.W.2d at 351. Appellant's eighth point of error is overruled.

■ Blackwell urges this court, in its ninth point of error, to be a trailblazer as to the strict liability law in Texas and adopt contributory negligence as a defense and comparative fault to reduce damages. The concurring opinion of Judge Pope in *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex.1980) is persuasive. Be that as it may, taking into consideration the recent decisions of our Supreme Court, we feel it is the responsibility of this intermediate appellate court to follow these decisions.

Appellant urges in its tenth point of error that the trial court erred in a series of rulings concerning the Highway Department's alleged negligent maintenance and repair of the pear burner. The trial court struck the negligence allegations from Blackwell's pleadings and refused to allow a trial amendment or submission of special issues on negligence, proximate cause and apportionment of damages. Appellant again argues under the theory of comparative fault that its liability should be reduced to the extent the Highway Department's negligence contributed to causing the injury of Cerda.

■ We reject these contentions. There is no basis for holding the Highway Department liable for its negligence. The Department is an arm of the State government and is protected by immunity from actions in tort. *Duhart v. State*, 610 S.W.2d 740, 741–42 (Tex.1980). Under the Highway Department Worker's Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 6674s (Vernon 1977) the State has made a limited waiver of immunity in favor of its employees injured at work and Cerda has availed himself of the Act and accepted the award. This was Cerda's sole remedy from the State. The State, as an immune party, is not subject to any claim for contribution or indemnity. *Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 154–55 (Tex.Civ.App.—Houston [14th Dist.]

1976, writ ref'd n.r.e.); *City of Houston v. Watson,* 376 S.W.2d 23, 33 (Tex.Civ.App.— Houston 1964, writ ref'd n.r.e.).

Under the Highway Department compensation system as opposed to the compensation scheme for private industry, both the Department and its employees are mandated by law to participate in the maintenance program. Tex.Rev.Civ.Stat.Ann. art. 6674s § 3 (Vernon 1977). There is no analogy then between an award to a Highway Department employee and a voluntary settlement between private parties which entitles a non-settling defendant to a reduction in damages. *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764 (Tex.1964).

Appellant's tenth point of error must also be rejected because Texas has no system of comparative fault under which a strictly liable defendant can have his liability reduced in the proportion a negligent party contributed to cause in the plaintiff's injury. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749 (Tex.1980).

Since this case is remanded it will not be necessary for us to consider points of error eleven and twelve.

The judgment of the trial court is reversed and the cause remanded.

KLINGEMAN, J., not participating.