**Ronald Wayne McGUIRE, Appellant,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., et al., Appellees.**

**John W. BENOIT, Individually and as Representative of the Estate of Eva Mae Benoit, et al., Appellants,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., et al., Appellees.**

**David FREEMAN & Inez Freeman, Appellants,**

v.

**HIRAM WALKER INCORPORATED, et al., Appellees.**

No. 09–89–092 CV.

Court of Appeals of Texas, Beaumont.

May 24, 1990.

Rehearing Denied June 11, 1990.

Walter Umphrey, Beaumont, Robert M. Campbell, Harold Nix & Associates, Daingerfield, for appellants.

O.J. Weber, Regi Martin, Elizabeth B. Pratt, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, David W. Ichel, Michael V. Corrigan, Bruce I. March, Simpson, Thacher & Bartlett, New York City, Gilbert I. Low, Orgain, Bell & Tucker, Beaumont, Theodore Voorhees, Jr., Charles Lister, Laird Hart, Steven F. Reich, Washington, D.C., Edward H. Green, Michael R. McGown, Weller, Wheelus & Green, Beaumont, Rebecca F. Schupbach, Brown–Forman Corp., Louisville, Ky., Kent M. Adams, Adams, Duesler & Donaldson, David E. Bernsen, David E. Grove, Benckenstein, Norvell, Bernsen & Nathan, David W. Ledyard, Richard L. Scheer, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for appellees.

## OPINION

BROOKSHIRE, Justice.

Three separate litigations were consolidated for appeal. Although there are several plaintiffs, they will be referred to for

brevity as McGuire; the several defendants will be referred to as Seagram. The latest live pleading of McGuire is his Fifth Amended Original Petition. In that petition McGuire seeks damages for certain diseases, bodily injuries, financial ruin, mental anguish, and loss of consortium caused by and brought about by the "addictive drug, alcohol". The above named causes of action and various elements of damages are basically founded on RE-STATEMENT (SECOND) OF TORTS sec. 402A (1965), according to McGuire's pleadings. Other theories of recovery and causes of action are also pleaded. Among these are negligence, breaches of implied warranties of merchantability and fitness, conspiracy, and the Texas Deceptive Trade Practices Act. McGuire, in charging negligence and failure to warn and failure to instruct, alleged Seagram was negligent in failing to warn Ronald McGuire "and all Americans" in the following particular matters:

### Failure to Warn and Instruct

These defendants failed to warn Ronald McGuire and all Americans that;

1.  Continued use or excess use of alcohol would cause cirrhosis of the liver.
2.  Alcohol is a drug.
3.  Alcohol is a depressant.
4.  Alcohol causes diseases of the stomach and duodenum.
5.  Alcohol inhibits medical treatment.
6.  Alcohol is toxic to the brain cells and tissues.
7.  Alcohol is toxic to tissues of the stomach, liver and heart.
8.  Drinking alcohol for pleasure or recreational purposes may lead to psychological and physical dependency.
9.  Alcohol compromises the immune system.
10. Some people are genetically predisposed to alcoholism.
11. Psychological and social factors may predispose a person to alcoholism.
12. Alcohol is harmful to health.
13. Over two (2) drinks per day is harmful to health.
14. They failed to warn of the signs and symptoms of alcoholism.
15. They failed to instruct on the symptoms of alcoholism.
16. They failed to instruct on safe use of the drug.
17. They failed to warn that alcoholism causes marital discord, family problems and financial problems.
18. They failed to warn that alcoholism will deteriorate or destroy conjugal relations.
19. They failed to warn that alcoholism is a lifetime disease and that recovery is impossible.
20. That "denial" prohibits addicts from recognizing an addiction and receiving treatment.
21. That treatment of the addiction is very costly and beyond the economic means of most alcohol addicts.
22. They failed to warn of the latent, hidden and concealed hazards, defects and dangerous effects of the drug alcohol.
23. They failed to warn Ronald McGuire's family and friends of the signs and symptoms of alcoholis. [sic]
24. They failed to instruct Ronald McGuire, his family and friends to encourage him to seek help at the first symptoms of alcoholism.

To these pleaded negligences, Seagram leveled special exceptions. A basic thrust of Seagram's special exceptions is that the effects of beverage alcohol are commonly known. Seagram contends there is no duty to warn the consumer of this common knowledge.

### RESTATEMENT (SECOND) OF TORTS sec. 402A (1965)

McGuire also avidly sought damages and pleaded for relief on certain alleged causes of action founded upon the RESTATEMENT (SECOND) OF TORTS sec. 402A (1965). In brief sum, Section 402A, "Strict

Liability", deals with the strict liability of the seller (or manufacturer) of a product for physical harm to a user or a consumer. Subsection (1) provides that one who sells any product in a defective condition unreasonably dangerous to the consumer is subject to liability for physical harm thereby caused to the ultimate consumer if the seller is engaged in the business of selling that product and the expectation is that the product will and does reach the consumer without substantial change in its condition when sold by the manufacturer or seller. The rule applies although the seller has exercised all possible care in the preparation and sale of his product and although the consumer has not bought the product from or entered into any contractual relationship with the seller. Additional exceptions leveled by Seagram were to a major effect that the lawsuit simply had no legal basis and was not an actionable claim or cause of action. Furthermore, the lawsuit as pleaded is not supportable by the law of strict liability or strict product liability.

On a second tack, Seagram's later group of special exceptions pronounced that a product permitted by law to be manufactured or that is safe for consumption in some quantity, although limited, precludes the manufacturer from any strict product liability.

### Duty to Warn

McGuire also had a pleading on the duty to warn in connection with an unreasonably dangerous product. McGuire alleges that a duty to warn and a duty to provide instructions for the safe use of a product arises in law initially when it is known or reasonably foreseeable that a product may pose a serious risk of harm or danger when used for its intended or reasonably foreseeable purposes or misuses. McGuire charges that Seagram and others knew of the potential harm to users of their products. McGuire alleges that based upon public policy considerations and for the protection of the general public that the strict liability doctrines must be placed on the marketing of alcohol products when the same are placed in the stream of commerce by their makers or distillers or brewers.

In a separate paragraph McGuire charges that liability should be imposed upon the defendants because of another violation of RESTATEMENT (SECOND) OF TORTS sec. 402A (1965). The thrust of this allegation is that Seagram and the other manufacturers had produced whiskey and other alcoholic products and placed the same in the stream of commerce. Some of them were consumed by McGuire, nevertheless, these defendants collectively knew or should have known at the time that the whiskey sold would be injurious to the human body and especially to the body of McGuire. Hence, the failure to warn of the dangers and to instruct as to safe use, thereby rendered the whiskey and other alcoholic beverages unreasonably dangerous as the same were marketed and that these failures to warn and failures to instruct were a producing cause if not a proximate cause of the occurrences made the basis of the litigation.

Then, McGuire alleges that he suffers from the disease of alcoholism. This disease of alcoholism is a physical and psychological dependency on alcohol. Alcoholism has put McGuire in a special class requiring full and adequate warnings. McGuire then charges that although fully aware of the addictive nature of beverage alcohol the defendants, being Seagram and others, totally failed to provide any warnings to McGuire, stating further that Seagram and the other defendants were at all times material and have been at all times material fully aware of the ever increasing number of Americans suffering from this serious disease of alcoholism. McGuire sets forth pleadings concerning the development of alcoholism and the development of the addiction thereto, as well as pleadings concerning the process of becoming an addict, averring that such process begins as a seemingly pleasurable activity, at least to the extent that it relieves some sort of bad feelings.

However, the drug then, over a period of time and after a duration of drinking and usage, becomes in an unsuspecting way to the user a means or method by which the individual user attempts to solve personal

problems and handle negative feelings. McGuire dogmatically charges that alcohol is an addictive drug and that the brain becomes accustomed to the presence of the drug and that a higher and higher dosage or intake of the drug alcohol is required to produce the same psychological effect and that the individual becomes a heavy user of the drug and is increasingly preoccupied with the consumption thereof and actually craves the drug when the drug is absent. Hence, the individual becomes alcohol dependent. Numerous other like or similar allegations exist. McGuire pleads that addiction to alcohol is a progressive disorder, beginning with social or recreational drinking but developing into psychological dependency and then to physical dependency in many users.

The Appellant maintains that there are those who have become or will become alcoholics because of a certain genetic predisposition or because of certain complex psychological or social factors. McGuire states that alcoholics are, in fact, sick and diseased people who suffer from a disease known as alcoholism. Thus, the industry, being the distillers and brewers and vendors, has a duty to warn social and recreational imbibers of the addictive nature of alcohol. The industry has a duty to warn of genetic predispositions to alcoholism or that psychological or social factors may predispose a person to alcohol addiction. Other duties are set forth. These are mainly duties to warn of various types.

In substance, he claims that the warnings must be specific in certain cases. McGuire charges that Seagram and the other manufacturers of alcoholic beverages have known in the past that over 50 percent of their profits come from about 13 percent of the American public that suffers from the disease of alcoholism or alcohol abuse. Nevertheless, these makers of alcohol and sellers of alcohol maintain their two billion dollar a year glamorous media advertisements and inducements which encourage this 13 percent of the population to consume even greater and greater quantities of the drug alcohol. McGuire charges that these distillers, brewers, vintners and vendors and other manufacturers and defendants, individually and in a conspiratorial concert with DISCUS have intentionally and also negligently failed to warn the American public as set out in detail in his fifth amended original petition. DISCUS stands for Distilled Spirits Council of the United States, Inc. McGuire unequivocally pleads that the dangers of alcoholism are not commonly known, vehemently charging that alcoholic products are dangerous to an extent beyond that which would be contemplated by an ordinary consumer who purchases such products with the ordinary common knowledge in the community as to its characteristics.

There are many other factual allegations, one of which is that Seagram and the other defendants for decades have had special knowledge of the dangerous propensities of the unreasonably dangerous drug known commonly as alcohol and that representatives of the alcoholic industry and DISCUS have attended many seminars and meetings where the medical and disabling effects of alcohol were discussed. Furthermore, that industry research has revealed each of the harmful effects involved. Moreover, the defendants and DISCUS and the alcohol industry have had full knowledge of the increased alcohol consumption and its consequential ravagings of society since the end of World War II and that these defendants and the industry have promoted and profited from this increased consumption. Therefore, McGuire charges that the defendants and the industry have a duty to warn of dangers of consuming the unreasonably dangerous product, being the drug alcohol.

McGuire says that proper, full and adequate warnings would be effective, informative and inexpensive. The cost for appropriate and significant warnings would not be burdensome. In fact, the cost of such warnings and labeling is reasonably estimated at about one penny per bottle. In addition to the labels and warnings thereon, these defendants could have employed some advertising methods to instruct adequately in the safe use of their products. But on the contrary, the only message that the defendants have given is that alcohol is

safe for consumption and that consumption is safe in any amount by all ages and continuously through every stage of adult life.

McGuire avers that he was unaware of the signs and symptoms of alcoholic addiction. He relied upon the public advertisements in newspapers, magazines and billboards issued by these defendants. These advertisements instilled in McGuire that drinking alcohol was a way of life that was safe, happy, rich, affluent, socially acceptable. And that business and family people who were successful reached their pinnacles of success by drinking and that they also rewarded their success and pinnacles of achievement by drinking. McGuire charges that even athletes, big game hunters and sportsmen, according to the advertising media, were people who drank alcoholic beverages; that people of all ages drink, even those of a ripe old age. These advertisements created in McGuire the false illusion and false belief that drinking was safe for his health. McGuire avers that had he been properly advised about the fact that alcohol toxicity destroys the brain in a slow, painless, unobservable and undetectable manner that he would have sought help and would have avoided alcoholic addiction. Furthermore, had he been warned or advised that consuming alcohol would, according to his petition, cause brain damage, liver disease and ultimately death, he would have definitely heeded such warnings. But he did not know of these disastrous matters. He became a victim of drug addiction from alcohol. His addiction resulted in brain damage.

Numerous other allegations exist concerning McGuire's physical, mental and psychological health or lack thereof. He avers that each and every one of the acts or omissions that are set out in his paragraph V was negligence and that these negligent acts were a proximate cause of injuries and damages to McGuire.

### The Warning Defect Issue

In another paragraph he sets forth that the liability of Joseph E. Seagram & Sons, Inc., is correctly founded upon a warning defect. He avers that the manufacturers manufactured and placed in the stream of commerce these alcoholic products, being whiskey which was consumed by McGuire. McGuire says that the defendants knew or by the exercise of reasonably developed human skills and foresight should have known at the time that the whiskey was sold that it would be injurious to the human body. Therefore, the failure to warn of the dangers or to instruct as to the safe use rendered the whiskey thereby unreasonably dangerous as the same was marketed, and that this failure to warn and failure to instruct was a producing cause of his injuries and damages.

### The Uniform Commercial Code

McGuire also pleads that certain acts and omissions amounted to a breach of the implied warranty of merchantability, stating that the defendants herein are whiskey merchants, and that the whiskey sold to McGuire was not merchantable because it was not adequately labeled and for McGuire, an alcoholic, it was not fit for the ordinary use or purpose for which it was actually sold and the whiskey did not conform to the promises and affirmations that were made in many newspaper, radio, magazine, billboard and television advertisements and that the unfit condition was a proximate cause of the occurrences in question and of the damages and injuries to McGuire. TEX.BUS. & COM.CODE ANN. secs. 2.314 and 2.715.

McGuire also charges that there existed a breach of an implied warranty of fitness under TEX.BUS. & COM.CODE ANN. secs. 2.315 and 2.715. He sets out that the defendant manufacturers and sellers of whiskey at the time of the sales had adequate reason to know the particular purpose for which the whiskey was sold and used or consumed by McGuire, an alcoholic, and others like him. McGuire and others were then relying upon these whiskey sellers' skill and judgment to furnish a suitable product. Nevertheless, the whiskey that was sold at material times was unfit for the purpose for which it was purchased because it did not have warnings of the

hazards of alcoholism. Hence, the whiskey was in an unfit condition, especially for McGuire and others like him. This unfit condition was the proximate cause of the occurrences made the basis of the suit.

### Alleged Harmful Effects of Alcohol

McGuire alleges that some of the harmful effects of alcohol are: fatty liver, alcoholic hepatitis, cirrhosis of the liver, cardiac arrhythmias and reduced cardiac contractility, cardiac myopathy, non-cardiac muscle disease, hypertension, gastritis, gastric ulcers and intestinal disease, diabetes, pancreatic disease, kidney disease, anemia and bleeding, malnutrition, immune system dysfunction with increased susceptibility to pneumonia and other infectious diseases, cancer of the mouth, tongue, pharynx, larynx, esophagus and liver, breast cancer in females, Fetal Alcohol Syndrome, sexual problems, gonadal atrophy and other endocrine dysfunctions, dangerous reactions with medicinal drugs which inhibit and complicate medical treatment for other diseases, alcohol-induced depression leading to suicide, alcohol dependence with dangerous withdrawal reactions, cognitive dysfunctions including brain damage and the Wernicke–Korsakoff Syndrome, impaired ability to drive and operate machinery or equipment, and accidental poisoning by alcohol.

### DISCUS

McGuire has lengthy pleadings adverse to the Distilled Spirits Council of the United States, Inc., known by the acronym of DISCUS. McGuire charges DISCUS with being an organizational arm of the manufacturers of distilled spirits and the drug alcohol with its governing board being comprised of top executives of the companies that manufacture, sell, and distribute the drug alcohol for profit. The actions, policies and the public representations and misrepresentations of DISCUS have in reality been those of the alcohol industry. McGuire pleads that DISCUS on its own, but also acting in a conspiracy with the alcohol industry, has engaged in the following matters:

1. Publicly promoted the alcohol industry position that alcohol drinking is not injurious to health.

2. Monitored literature from around the world on alcohol and its effects on the human body and attempted to suppress unfavorable reports.

3. Challenged unfavorable reports.

4. Diluted and diminished the influence of unfavorable reports.

5. Generated, or caused to be prepared, papers and articles refuting that alcohol consumption is harmful to the body.

6. Carefully controlled grants to persons or institutions that would issue reports or articles favorable to the alcohol drug industry.

7. Intentionally and negligently disseminated false and misleading information about the alcohol drug.

8. Intentionally and negligently suppressed scientific and medical information beneficial to consumers.

9. Acted in concert with the alcohol industry to take uniform positions on suppression of information and creating a false illusion in the consumers mind about the drug alcohol.

10. Took positions before the Federal Government and its agencies that were contrary to the health and welfare of all Americans on alcohol consumption to further the profit making of the alcohol industry.

11. Took a uniform stand against warnings, labeling and dissemination of information about the unreasonably dangerous product;

12. Guided the alcohol industry in advertising to influence greater and continued consumption by existing users and to attract new alcohol drug consumers.

13. Intentionally failed to disseminate information on the harmful effects of alcohol.

14. Intentionally failed to warn of the hazards of alcohol consumption and,

15. Intentionally failed to instruct on safe use of alcohol and instruct on addiction to the drug.

Hence, by the pleading DISCUS is individually liable for fraud, negligence, concealment, suppression and also misrepresentation. And further, that has actually become liable because of its active conspiracy with Joseph E. Seagram & Sons, Inc., Tarrant Distributors, Inc., and the alcohol industry.

### The Texas Deceptive Trade Practices Act

Additionally, McGuire sets up lengthy and detailed pleadings under the TEX.BUS. & COM.CODE ANN. sec. 17.41, et seq., commonly known as the Texas Deceptive Trade Practices and Consumer Protection Act. He further unequivocally states that the unlawful acts and practices described within the DTPA were committed knowingly by the defendants.

McGuire states he has sustained injuries and resulting disabilities which were proximately caused by the gross negligence and breach of the various warranties. Furthermore, he says that the defendants placed in the stream of commerce an unreasonably dangerous product, having been marketed with material misrepresentations. There misrepresentations, acting together, have resulted in being a producing cause of the injuries, damages, and disabilities suffered by McGuire. As a result of these, McGuire pleads for all of his damages allowed by law including, but not limited to, past and future mental anguish, past and future physical pain and suffering, past and future physical impairment, loss of earnings in the past, loss of earning capacity in the future, past and future medical expenses. He asked for additional damages pursuant to Section 17.50 of the Texas Deceptive Trade Practices Act. Although there are many other allegations and significant pleadings it would serve no useful purpose to elongate this portion of the opinion.

■ The district court entered an order on special exceptions sustaining the same, and dismissed the plaintiff's Fifth Amended Petition with prejudice. Since the plaintiff's entire lawsuit was dismissed with prejudice and the order of dismissal was based upon the special exceptions, we must approach this appeal in accordance with certain well-established precedents. The dismissal with prejudice in the State court proceeding is limited. When the pleadings state a cause of action, a dismissal with prejudice based on special exceptions is incorrect and in testing whether the pleadings state a cause of action, we are bound to accept as true the contents, allegations and reasonable intendments of the plaintiff's live pleadings. We must necessarily assume that all of the allegations and alleged material facts are true. *El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex. 1987); *Wheeler v. White,* 398 S.W.2d 93 (Tex.1966). It's a balanced, reasoned statement to pronounce that Seagram's special exceptions were sustained on the theory that the effects of alcohol are commonly known and that no duty exists to warn of the addictive, debilitating and deadly effects of alcohol. In view of the pleadings of McGuire we hold that a duty does exist under the pleadings coupled with their reasonable intendments and logical, compelling, necessary inferences therefrom.

In holding that a duty exists, we perceive that the law is not an inflexible dead letter. The law can and should in certain areas experience reasonable evolution. See *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983). Texas courts have with consistency made modifications in the law of torts as the need therefor arose in a changing, modern industrialized society. See *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex. 1967); *Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942).

■ The common law doctrine of negligence or failure to use due or ordinary care is composed of three prerequisite elements. The first is a legal duty owed by one person or entity to another person or entity. The second is a breach of that duty. Third are resulting damages that are proximately caused by the breach of the duty or by the

negligence of the offending party. *Rosas v. Buddie's Food Store,* 518 S.W.2d 534 (Tex.1975). In defining and describing a "duty", the Supreme Court has written generally that if *one party negligently creates a situation then it becomes his duty to do something about it in order to prevent injury to others if it reasonably appears or should appear to him* that other persons in the exercise of their lawful rights may be injured, thereby suffering damages. See *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109 (1942).

A important element in duty is the foreseeability of the risk. *El Chico Corp., supra,* In addressing foreseeability the Supreme Court stated that it was known by common knowledge that alcohol distorts perceptions, slows reactions, impairs motor skills while in the operation of a motor vehicle. *Id.* While affording deep respect for the RESTATEMENT (SECOND) OF TORTS sec. 402A (1965), we decline to be bound by all of the sentences in h, i, and j set out under Section 402A. We except pointedly to i.

■ Under the pleadings of McGuire we conclude that in addition to the manufacturer's duty to warn there is a separate duty to provide *adequate information that will enable the consumer to safely use the product.* Sales, *The Duty to Warn and Instruct for the Safe Use and Strict Tort Liability,* 13 ST. MARY'S L.J. 521 (1982). Directions and instructions for the proper consumption or use of a product subserve different purposes which are distinct from the warnings given. Directions and instructions enlighten the consumer or user of the product in the proper, safe, efficient, non-harmful use of the product and the proper procedures to avoid unsafe uses or unsafe consumption. On the other hand, *warnings communicate to the ultimate consumer the dangers inherent in the use of the product. Id.* at pages 553–557. Thus, a general awareness of a product's dangerous characteristics may relieve the manufacturer of a duty to warn of those known dangerous characteristics; nevertheless, the manufacturer has an additional duty to set out instructions for the safe consumption or safe use of the product.

■ A manufacturer or seller's ultimate decision to manufacture or distribute, market and sell a product necessitates at times a balancing of the product's utility against its known dangers. A factor in this decision may be the important benefits derived from the use or consumption of the product. The lack of realistic benefits in certain cases is to be considered. Even so, when the balanced decision leads to the conclusion that the product should be marketed, the manufacturer or seller has a responsibility and a duty to advise and enlighten the consumer of the risk of harm. These same actors have the duty to instruct the consumer in the safe use or consumption of the product. The failure to give adequate warnings and sufficient instructions and directions may, indeed, render the product unreasonably dangerous. *Borel v. Fiberboard Paper Products Corporation,* 493 F.2d 1076 (5th Cir.1973), *cert. den'd,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). The reasoning behind this principle of liability is that the consumer is entitled to exercise his own judgment and to arrive at his own choice as to whether or not the product's utility or benefits justify the consumer exposing himself to the risk involved. *Id.*

### Accountability of Defendants

■ The manufacturer is to be held to the knowledge and skill of an expert. This expertise is material and cogent in determining whether the manufacturer knew or should have known of the dangers and risks involved and whether the manufacturer was negligent in failing to communicate this superior, expert knowledge and information to the consumer. *Borel v. Fiberboard, supra.* Likewise, a manufacturer's status as expert definitely connotes that the manufacturer must keep current on scientific knowledge, scientific discoveries and other advances. A presumption exists that the manufacturer has knowledge of what these fresh discoveries reveal. Further, the manufacturer has a duty to test his product. The testing and research

must be commensurate with the risk involved. *Borel* applied Texas law. See and compare *Brune v. Brown–Forman*, 758 S.W.2d 827 (Tex.App.—Corpus Christi 1988, writ granted). Later, the said order was withdrawn and writ denied. *See and compare Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743 (Tex.1980). Indeed, if a manufacturer of a product knows or in the exercise of ordinary care, should know of a potential harm or risk to a user because of the nature of the product, then a duty is imposed and placed upon the manufacturer to give an adequate warning of such dangers or risks. *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801 (Tex.1984); *Crocker v. Winthrop Laboratories*, 514 S.W.2d 429 (Tex.1974).

■■■ A product may be deemed to be a defective one if it is unreasonably dangerous because adequate warnings or instructions are not provided to the user. Therefore, the manufacturer may be required to give adequate instructions and directions on the container of the product as to its proper and safe use. And this duty to give instructions and directions also includes the duty to warn against and to instruct against foreseeable misuses. *Blackwell Burner Co., Inc. v. Cerda*, 644 S.W.2d 512 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

■■■ Attuned to *El Chico Corp., supra,* and *Borel, supra,* and *Wheeler, supra,* we conclude that McGuire pleaded a cause of action showing that alcohol is a dangerous drug and an unreasonably dangerous product. This conclusion is based on his pleadings. Texas courts have wrought reasonable changes in the common law of torts as the need therefore arose in a changing society. New knowledge and new scientific research (involving such products as beverage alcohol) are sound grounds for pronouncing enlightened, pragmatic duties in tort law. These pronouncements have been historically and traditionally the proper province of the judicial branch. With judicial restraint and full respect for precedent, the judiciary is within its proper ambit to simply recognize drastically changed conditions and scientifically sound new consensus of knowledge involving such products as beverage alcohol. Vastly increasing complexities in relationships between and among human beings (coupled with entire new fields of scientific knowledge and empirical wisdom) importune the judiciary to reexamine and to conservatively, prudently, implant correlative duties. See W. Prosser, *Handbook of the Law of Torts* sec. 53 (4th ed. 1971); *Otis Engineering Corp. v. Clark, supra*).

Attuned to McGuire's live pleadings we perceive that he alleged that beverage alcohol and Seagram whiskey was an unreasonably dangerous product to him and that it was dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with ordinary knowledge common to the community in which he lived as to that product's characteristics and that the manufacturer and seller gave inadequate warnings and insufficient instructions for the reasonably safe use and reasonably safe consumption of the product. Indeed, McGuire argues that no warnings and no instructions were given.

*Products Liability: Plaintiffs' Duties, Defendants' Duties*

■■■ Basically, when a maker knows or should know of a potential danger or injury to a consumer because of the nature of the product and its likelihood of prolonged use, then the maker of that product is duty-bound to give an adequate warning of such dangers or injuries and to provide adequate and sufficient instructions for the safe use of the product. *Bristol–Myers Co., supra.* And to discharge his duties under the strict products liability concept the maker and seller may be required to furnish directions and instructions as well as warnings on the container concerning its safe use. *Lucas v. Texas Industries, Inc.,* 696 S.W.2d 372 (Tex.1984). And these duties also encompass the duties to warn and to give instructions and directions concerning those misuses which are foreseeable. *Blackwell Burner Co. v. Cerda, supra.* When the defect results from an inadequate labeling or inadequate warn-

ings or inadequate instructions and directions for safe use, then the defect is considered as a separate matter from the very product itself. See *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602 (1972). Hence, in a strict products liability case an injured and damaged litigant does not have the burden of going forward or proving that he lacked knowledge and appreciation of the danger involved. Nor does that plaintiff have to obtain findings on these issues. The plaintiff has discharged his duty by showing that the maker and distributer had a duty and breached the duty. *Dixon v. Van Waters & Rogers,* 682 S.W.2d 533 (Tex.1984); *Crocker v. Winthrop, supra.*

■ Of course, a manufacturer who has special knowledge and prior scienter about the safe use of a potentially dangerous product, under certain circumstances, is under a duty to supply that special knowledge and information to its users and consumers. *Borel v. Fiberboard, supra.*

RESTATEMENT (SECOND) OF TORTS
sec. 402B (1965)

■ We conclude that the live pleadings buttressed by reasonable intendments stated a healthy cause of action under RESTATEMENT (SECOND) OF TORTS sec. 402B (1965). The gravamen of Section 402B is that one engaged in the business of selling chattels, who by advertising or labels makes a misrepresentation of a material fact concerning the character, nature or quality of a chattel sold by that entrepreneur is or may be subject to liability for physical harm to the consumer or user when resulting from a justifiable reliance upon that representation. The misrepresentation is touchstone of the action and such action will lie even though the misrepresentation was not fraudulently or negligently made and even though the consumer or user had no contractual relationship with the seller or maker. Section 402A is not based or founded upon a misrepresentation. Section 402B does depend upon a misrepresentation followed by physical harm to a consumer of the chattel when the harm resulted from justifiable reliance

upon the misrepresentation. The misrepresentation may be made to the public and misrepresents a material fact about the quality and characteristics of the chattel sold. Attuned to the comments and illustrations following Section 402B, we pronounce that, under this record, whiskey is a chattel. Section 402B, illustration 3, deals with a product to be used by women at home for giving "permanent waves" to their hair. The product is in bottles. The actionable misrepresentation may be made to the public.

■ McGuire raised by pleadings a cause of action against DISCUS efficaciously alleging a conspiracy concerning advertising that led to greater alcoholic consumption. There are also pleadings that were to the effect that certain vital deleterious facts were suppressed. Damaging consequences of alcohol ingestion over long periods was suppressed. These pleadings, of course, must be accepted as true. We decide that they do state a cause of action for a conspiracy and for concealment. See and compare *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788 (Tex.App.—Beaumont 1988, writ den'd). We conclude that the plaintiff McGuire raised by his pleadings under well-established precedents the causes of action that he pleaded in his Fifth Amended Original Petition.

In sum, we conclude that the plaintiffs' various pleadings pursuant to authorities and precedents entitle the plaintiffs to a trial on all of the theories and causes of action and rights of recovery as set out in the various pleadings making the dismissals erroneous. Of course, whether the proof and evidence upon the trial of the cases will support the various issues raised by the pleadings is another matter—that matter will have to await a future day. Since we have found error, the plaintiffs in an open court will have full opportunities to obtain their remedies, if any are proved by probative, competent evidence, for any actionable injuries due to them. TEX. CONST. Art. I, sec. 13. The judgments of dismissal are reversed; the causes are remanded.

Query: Will the probata sustain and meet the allegata?

REVERSED AND REMANDED.

WALKER, Chief Justice, concurring.

The reason for this concurrence is to explain my own inconsistency. The three cases consolidated into this appeal all came from the 58th Judicial District Court where I as judge of that court, granted Defendant's Special Exceptions which effectually defeated all of the Plaintiff's causes of action. I did so because I believed such action to be proper under the State of the law as it existed prior to this opinion and in spite of my personal or philosophical feelings of my own. I believe this to be the duty of a trial judge in spite of argument to the contrary.

I concur that these cases in all things be reversed and remanded for trial on the merits.